[Civ. No. 45391. Second Dist., Div. Five. Nov. 10, 1975.]

ALBERT G. BODINE, JR., et al., Plaintiffs and Respondents, v. UNITED AIRCRAFT CORPORATION, Defendant and Appellant.

**COUNSEL**

Ward & Heyler, Guy E. Ward, Moore & Moore, Henry T. Moore, Jr., and Robert H. Moore for Plaintiffs and Respondents.

O'Melveny & Meyers, Sidney H. Wall and Mark Wood for Defendant and Appellant.

**OPINION**

**KAUS, P. J.**—Defendant United Aircraft Corporation ("United") appeals from trial court orders denying its petition to order arbitration and granting injunctions restraining United from proceeding with arbitration.

### FACTS

The genesis of the basic dispute between the parties is a contract, dated January 1, 1960, under which plaintiff agreed to disclose to United certain studies, engineering data, trade secrets and inventions, for an option period of six months. During that option period—later extended to nine months—United had the power to acquire certain licenses to exploit the data furnished to it, for which licenses it was to pay a royalty of $100,000 in cash, plus minimum royalties of $10,000 per month

against specified percentages of sales. Concurrently with this "royalty license" agreement plaintiff executed a letter dated December 31, 1959, which extended to United a further option in the event it exercised the royalty option under January 1, 1960, agreement: United could discharge its duty to pay royalties and acquire a "paid-up license" by paying $15 million in addition to all royalties theretofore paid or accrued, or $20 million, to be computed by crediting royalties already paid against said sum.

The January 1, 1960, contract contained an arbitration clause, copied below,[1] and also provided that it should "be governed by the laws of the State of Connecticut."

The option letter of December 31, 1959, made no reference to arbitration.[2]

Disagreements between the parties developed in due course. Plaintiff claimed and United denied that it had in fact exercised its option by exploiting and using the data which plaintiff had furnished. On February 8, 1963, plaintiff filed his first amended complaint in this case. It contained five counts: count 1 was based on the theory that United had exercised the option for a paid-up license and asked for damages in the sum of $15 million; count 2 was based on the contract for a royalty

---

[1] *"Arbitration*

"5. All disputes and differences arising out of this Agreement either before or after its termination shall be settled and finally determined *by arbitration in the City of Hartford, Connecticut,* in the following manner:

"Each party to this Agreement shall appoint an arbitrator. If the two arbitrators so appointed cannot agree within two (2) weeks of their appointment, they shall select a third arbitrator within fifteen (15) days after the expiration of such two (2) weeks. The arbitrators shall meet and give opportunity to each party to this Agreement to present its case and witnesses, if any, in the presence of the other, and shall then make their award. Decision in writing of the three arbitrators, or any two of them, shall be final and binding upon the parties hereto, and judgment may be entered thereon in any court having jurisdiction. Such decision shall include the fixing of the expenses of the arbitration and assessment of the same against either or both parties. If either party fails to appoint its arbitrator within sixty (60) days after notice in writing requiring it to do so, the arbitrator appointed by the other party shall act for both, and his decision in writing shall be final and binding upon both parties, as if he had been appointed by consent.

"If, in an appropriate case, the arbitrators appointed by the parties shall fail to select a third arbitrator, *a third arbitrator shall be selected by the Superior Court for Hartford County, Connecticut,* in accordance with the statute in such case made and provided." (Italics added.)

[2] The trial court found that both writings were signed and executed by plaintiff at the same time when they were "physically attached together." Plaintiff argues that, therefore, disputes relating to the paid-up license were also subject to the arbitration clause contained in the royalty license agreement. In view of the result we reach, we find it unnecessary to discuss this contention.

license and claimed damages in a like amount; count 3 relied on an implied agreement to pay $15 million for the use of the data furnished by plaintiff;[3] count 4 was a common count, based apparently on the paid-up license theory; count 5 alleged promissory fraud by United in connection with the royalty license agreement pleaded in count 2.

United answered the amended complaint on March 29, 1963. It also counterclaimed for $76,000, claiming plaintiff had breached the royalty license agreement. Copies of both writings, including of course, the arbitration provision contained in the royalty license agreement, were attached to defendant's answer. No attempt to seek arbitration was, however, made until September 21, 1973.

Much had happened in the intervening decade. After extensive discovery, the parties finally proceeded to jury trial in January 1968. During the trial, plaintiff was nonsuited on counts 1 and 4. On March 8, 1968, the jury returned a verdict against plaintiff on count 3, but awarded him compensatory and punitive damages for a total amount of $13,500,000 on counts 2 and 5. The trial court, however, granted defendant a new trial on those counts. Both parties appealed. In December 1972, Division Two of this court, in an unpublished opinion, affirmed the trial court in all respects. After denial of a petition for hearing by the California Supreme Court, the matter became final.

Thus, the dispute remaining to be tried was limited to the royalty license agreement, set forth in count 2, and the alleged fraudulent inducement in connection therewith—count 5.

In September 1973 defendant sent plaintiff a letter demanding arbitration of the disputes set forth in counts 2 and 5. In October 1973 plaintiff noticed a motion for an injunction to enjoin arbitration proceedings and three days later defendant filed a petition to order arbitration.

■ The trial court found that defendant had waived and therefore lost its right to arbitration. We agree.

## DISCUSSION

United appreciates the difficulty of its position: Without ever asserting its right to arbitrate, it participated in extensive litigation through the

---

[3]The original prayers for $15 million under counts 2 and 3 were later amended to $22 million.

pleading, discovery, trial, new trial and appeal stages. It recognizes that normally its attempt to avoid submission of the issues framed by counts 2 and 5 to another California jury would be quixotic, but contends that, notwithstanding the 10-year delay, under the "unique" circumstances of this case, it is entitled to arbitration as a matter of law.

United's theory is that its 1973 demand to arbitrate counts 2 and 5 was timely because it had "no viable right to arbitration" until the previous appeal eliminated the nonarbitrable counts 1, 3, and 4: therefore, any attempt to demand arbitration before that decision became final would have been "futile" and "doomed to failure." The present posture of the case is therefore, in United's view, precisely the same as it would have been, had United asserted its right to arbitrate when it had its first chance to do so.

We disagree, even if we accept certain debatable premises of United's position.[4]

United is, of course, aware that the pendency of nonarbitrable as well as arbitrable issues between litigants is no obstacle to a petition for arbitration. Section 1281.2 of the Code of Civil Procedure expressly provides in relevant part:

"If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies."

---

[4]United observes that in 1963 it was an open question, both in California and in Connecticut, whether the alleged fraudulent inducement of plaintiff to enter into the contract on which count 2 is based—in other words, count 5 of the amended complaint—was arbitrable. Similar disputes were held arbitrable in *Cook v. Superior Court*, 240 Cal.App.2d 880 [50 Cal.Rptr. 81], a 1966 California decision, and in *A. Sangivanni & Sons v. F. M. Floryan & Company*, 158 Conn. 467 [262 A.2d 159], a 1969 Connecticut case. United does not, however, point to any decision in either jurisdiction denying the arbitrability of such a dispute. Its argument therefore assumes that a party does not waive its right to arbitrate a dispute unless a favorable outcome of a petition to arbitrate is a sure thing.

United also assumes that, as a matter of law, the arbitration clause of the royalty license contract was not incorporated in the paid-up license option which was executed concurrently. (See fn. 2, *ante*.)

United asserts, however, that had it sought arbitration in 1963, the court would inevitably have stayed arbitration on count 2 and ordered the parties to try the other counts first.

While we do not agree with United's assumption that this would necessarily have been the only correct ruling in 1963, the issue is irrelevant.[5] By not even submitting the question whether the parties should arbitrate first and litigate later—or vice versa—and by litigating all counts, United clearly waived the arbitration clause of the royalty license contract.

Arbitration is not a matter of absolute right. Section 1281.2 of the Code of Civil Procedure provides that the court shall order arbitration unless it determines that the right to compel arbitration has been waived. The law is well established that "the arbitration provision of a contract may be waived by either or both of the parties by litigating the dispute which would be arbitrable under the provision and not raising the question of the arbitration provision [citations] . . . ." (*Local 659, I.A.T.S.E.* v. *Color Corp. Amer.*, 47 Cal.2d 189, 194-195 [302 P.2d 294].) Litigate is, of course, exactly what defendant did.

This rule is not a relic of the era of judicial hostility toward arbitration. In *Gunderson* v. *Superior Court*, 46 Cal.App.3d 138, 143 [120 Cal.Rptr. 35], the court stated: "Arbitration is a recognized and favored means by which parties expeditiously and efficiently may settle disputes which might otherwise take years to resolve. [Citations.] But this right may be lost, as any contractual right which exists in favor of a party may be lost through a failure properly and timely to assert the right. A right to compel arbitration is not, unless expressly provided for in the agreement, self-executing. If a party wishes to compel arbitration, he must take active and decided steps to secure that right, and is required to go to the court where plaintiff's action lies. [Citations.]"

---

[5]It seems, at best, a toss-up what a 1963 trial court, unaided by the mountains of evidence generated during the next five years, would or should have ruled. The basic posture between the parties was that plaintiff asserted a breach of the royalty license agreement—count 2. In addition, he claimed that not only had United come under a duty to pay the royalties set forth in that agreement, but that it had actually exercised its option to convert the royalty license into a paid-up license. We can think of much that could have been said in favor of proceeding to arbitrate count 2 first, and delaying trial on the other counts. If plaintiff were to prevail in the arbitration, the balance of his grievances would probably merge into the award, in fact if not necessarily in law. If he failed, the arbitration could easily result in the final determination of some of the remaining issues with respect to which plaintiff would be collaterally estopped at a later trial. In short, we simply do not know what would or should have happened in 1963, had United asserted its then undoubted right to arbitrate.

United asserts that waiver of the right to arbitrate requires prejudice and fearlessly argues that, as a matter of law, none was shown. We disagree. United concedes that the minimum result of a 1963 petition to arbitrate would have been a ruling staying arbitration on count 2 while the parties proceeded to the discovery and trial stages of the balance of the issues. Instead count 2 was tried along with the rest. To the extent that prejudice is a factor, it must be conclusively presumed. That count 2 is still unresolved is immaterial—it is not untried.[6]

Affirmed.

Stephens, J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 8, 1976.

---

[6]We do not intimate that nothing less than a trial will amount to prejudice as a matter of law. Indeed United's own authorities demonstrate that the point where prejudice became no longer debatable was passed long before count 2 went to trial. Thus, *Carcich* v. *Rederi A/B Nordie*, (2d Cir. 1968) 389 F.2d 692, 696, suggests that a waiver will be found and prejudice presumed where a defendant, entitled to arbitration, takes "advantage of judicial discovery procedures not available in arbitration." (*Ibid.*, p. 696, fn. 7.) *Hilti, Inc.* v. *Oldach*, (1st Cir. 1968) 392 F.2d 368, 371, notes that the defendant did not "irrevocably lock litigious horns by filing a counterclaim . . ." United, of course, did just that. The only California authority cited, *A. D. Hoppe Co.* v. *Fred Katz Constr. Co.*, 249 Cal.App.2d 154, 161 [57 Cal.Rptr. 95, 25 A.L.R.3d 1162], is even wider off the mark. There the arbitration agreement contained no time limit for asserting the right to arbitrate which the defendant promptly claimed after being sued. All that the case holds is that prejudice is a factor to be considered in determining the reasonableness of the pre-litigation delay.