[S.F. No. 23842. Oct. 5, 1979.]

VICTORIA J. DAVIS et al., Plaintiffs and Respondents, v.
BLUE CROSS OF NORTHERN CALIFORNIA, Defendant and
Appellant.

FRED E. WARGO et al., Plaintiffs and Respondents, v.
BLUE CROSS OF NORTHERN CALIFORNIA, Defendant and
Appellant.

420

COUNSEL

White, Giambroni & Walters, Kathleen Courts, Joseph T. White, Jr., and J. Michael Amis for Defendant and Appellant.

Musick, Peeler & Garrett and James E. Ludlam as Amici Curiae on behalf of Defendant and Appellant.

Bruce A. Bailey and Damanes & Bailey for Plaintiffs and Respondents.

OPINION

**TOBRINER, J.**—In these consolidated cases, defendant Blue Cross of Northern California (Blue Cross or insurer) appeals from orders of the San Mateo Superior Court denying its petitions to compel arbitration in two class actions filed against it by a number of individuals insured under Blue Cross hospitalization policies. The trial court denied Blue Cross' request to submit the disputes to a medical arbitration panel on a number of independent grounds, concluding, inter alia, that Blue Cross had breached its duty of good faith and fair dealing to its insureds, and had consequently waived its right to demand arbitration, by failing to apprise its insureds at the time it rejected their claims either of the availability of arbitration or of the procedure by which the insureds could initiate arbitration.

Blue Cross now contends that the trial court erred in refusing to compel arbitration. As we shall explain, however, we have concluded that

the trial court correctly found that Blue Cross' failure timely or meaningfully to apprise its insureds of their rights to arbitration constituted a breach of its duty to its insureds, precluding Blue Cross from subsequently compelling such insureds to submit their claims to arbitration. Accordingly, we affirm the trial court orders.

1. *The facts and proceedings below.*

In July 1976, plaintiffs, individual "subscribers" or insureds under separate but similar hospitalization policies issued by defendant Blue Cross,[1] filed the underlying class actions against Blue Cross. In essence, plaintiffs contended that Blue Cross had adopted an interpretation of its hospitalization policies that regularly denied its insureds hospitalization benefits to which they were entitled. The complaints briefly described the circumstances under which each of the named plaintiffs, pursuant to his or her physician's advice, had been hospitalized. In each case, Blue Cross, although initially confirming general coverage for hospitalization, thereafter refused to pay for the bulk of the hospital expenses incurred by each insured during his or her hospital confinement.

The complaints sought relief under various causes of action, alleging that Blue Cross' course of conduct subjected the insurer to liability for (1) breach of written contract, (2) breach of implied covenant of fair dealing, (3) false advertising (Civ. Code, § 1770), (4) breach of oral contract, (5) breach of fiduciary relationship and (6) misrepresentation of the terms of an insurance policy (Ins. Code, § 790.03.) Plaintiffs sought to recover damages and to obtain declaratory and any other appropriate relief.

Shortly after the filing of the complaints, Blue Cross petitioned the trial court for orders to compel plaintiffs to submit their underlying disputes to arbitration. (See Code Civ. Proc., § 1281.2.) In its petitions, Blue Cross asserted that under the terms of one clause of the applicable hospitalization policies, plaintiffs were obligated to submit most of the claims raised in their complaints for resolution by a medical arbitration panel rather

---

[1]A number of the hospitalization policies were obtained from Blue Cross by several of the named plaintiffs, or their spouses, on an individual basis; the remaining policies were group insurance policies, similar to the policy at issue in *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699 [131 Cal.Rptr. 882, 552 P.2d 1178]. Because this case involves insurance policies falling into both categories, we do not believe that this litigation provides a proper vehicle for determining whether an arbitration clause inserted into a contract in a true setting of an "adhesion contract" would be binding on a party who did not knowingly and voluntarily agree to the arbitration provision. (Cf. *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].)

than by a court.[2] Although Blue Cross acknowledged that several of plaintiffs' causes of action—namely, the count relating to alleged violation of the false advertising statute and the count alleging a breach of oral contract—did not fall under the insurance policy's arbitration clause, the insurer contended that the bulk of the controversy was arbitrable and that the nonarbitrable causes of action should be stayed pending the outcome of arbitration.

Plaintiffs opposed the insurer's request, contending that the petitions to compel arbitration should be denied on a number of separate grounds. First, plaintiffs urged that Blue Cross by its entire course of conduct as to its insureds had waived any right to compel arbitration. In this regard, plaintiffs maintained that the insurer—in violation of its quasi-fiduciary obligations to its insureds and contrary to the covenant of good faith and fair dealing implied in its insurance contract—had adopted "a deliberate policy of not informing policy beneficiaries of their rights to arbitrate." Plaintiff asserted that by virtue of the obscure placement of the arbitration clause in the insurance policy without a heading designating the provision as an "arbitration clause"[3] and by virtue of the failure of the clause to advise insureds of the procedure by which arbitration could be initiated,[4] Blue Cross had reason to know that its insureds would generally not be adequately informed of their arbitration rights.

Plaintiffs alleged that despite the foregoing knowledge, Blue Cross followed the regular practice of rejecting claims submitted by its insureds without notifying them of the availability of an arbitration procedure to which they could resort if they disagreed with the rejection of their claim. Plaintiffs attached copies of the rejection letters which Blue Cross had

---

[2]As set out in the trial court's findings, the clause relied upon by Blue Cross reads as follows: "G. The initial determination as to whether the limitations set forth apply so as to preclude benefits otherwise provided herein shall be made by Blue Cross; however, if the Subscriber does not agree, then such determination shall be made by arbitration under the laws of the State of California. Such arbitration shall be held before a designated and proper committee under the auspices of the local medical association where the hospital services and benefits in dispute were provided. In the event that there is no such committee in the area, or the committee declines to sit as arbitrator, then and in that event, the same shall be submitted to the arbitration of three competent and disinterested Physicians and Surgeons actually engaged in their profession in the said area."

[3]The trial court found, in this regard, that "the clause in reference to arbitration is contained in a general section in the final page of a multi-page contract without being separately set out or referenced as an arbitration clause" and also that "[i]n none of the contracts . . . is there any bold type heading or other heading setting out 'ARBITRATION CLAUSE' or words to that general effect."

[4]The trial court found that "[i]n the above contract, the procedural steps for initiating and proceeding with arbitration are not set out."

sent to the named insureds; the letters simply stated that Blue Cross had determined that the hospitalization expenses which the insured had incurred were not covered by the applicable policy and made no mention of any recourse the insured might have under the policy's arbitration clause.[5]

Plaintiffs additionally contended that Blue Cross had waived its right to compel arbitration by its own failure promptly to initiate the arbitration process after learning that its insureds disagreed with the rejection of some or all of their hospitalization claims. Plaintiffs argued that if Blue Cross desired to invoke the arbitration procedure, it bore the obligation to demand arbitration within a reasonable time after it knew that a dispute had arisen over its determination of an insured's claim. Plaintiffs claimed that Blue Cross had lost its right to compel arbitration because it had taken no such action in this case, and had instead simply waited to demand arbitration until after the present complaints were filed—a period of from three to fourteen months after the fruition of its disagreements with its insureds.

In addition to contending that the insurer had waived its right to arbitration on the two grounds noted above, plaintiffs argued that Blue Cross' petitions should be denied pursuant to section 1281.2 of the Code of Civil Procedure because most of the issues raised by the complaints were not subject to arbitration and the determination of such nonarbitrable issues would render unnecessary any arbitration.[6] Plaintiffs asserted that the arbitration provision of the insurance policy would, at most, apply only to the cause of action relating to the alleged breach of written

---

[5]A typical letter from Blue Cross to one of its insureds read as follows:

"Dear Mr. Mainwaring:

"When we originally received this claim, it was submitted to our Medical Consultant for review. At his suggestion, we obtained additional medical information from the hospital in order to determine the benefits payable under the terms of your contract.

"It is our Medical Consultant's opinion, based on all of the information received, that we can provide benefits for three days commencing on April 18, 1975. A payment of $422.46 for hospital services is being issued to the hospital in your behalf. We do find that the remainder of this admission was primarily for care of a condition which normally does not require general hospital-type care, which is not covered by your contract.

"We would like to be able to provide benefits for the full stay, however, this is not always possible. We are sorry that a portion of this admission does not come within the terms of your contract."

[6]Section 1281.2 provides in relevant part: "If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action . . . and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies."

contract, and would not resolve the numerous other causes of action relating to the insurer's allegedly wrongful business practices.

Finally, plaintiffs asserted that the petitions to compel arbitration should be denied because of the uncertainty of the arbitration clause. In this regard, plaintiffs maintained that the clause did not define the scope of the matters subject to arbitration and that the provision did not indicate either the method for initiation of arbitration or the procedures for governance of that process. Although the policy provision did indicate that arbitration would be conducted under the auspices of the "local medical association where the hospital services and benefits in dispute were administered," plaintiffs urged the ambiguity of the clause in that it did not indicate which local medical association would conduct the arbitration in the allegedly not infrequent circumstance in which more than one medical association is located in the vicinity.

After reviewing the insurer's petitions and plaintiffs' opposition, and hearing oral argument on the matter, the trial court rendered the two orders at issue here, denying Blue Cross' request to compel arbitration. In the findings of fact and conclusions of law accompanying its orders, the trial court set forth the numerous grounds upon which it had determined that the petitions should be denied, essentially agreeing with plaintiffs' contentions on all issues.

Blue Cross now appeals from the trial court's orders denying arbitration (see Code Civ. Proc., § 1294, subd. (a)), contending that each of the independent bases for the trial court's denial of its petitions is erroneous. As we explain, we have concluded that the trial court properly denied the insurer's petitions on the ground that the insurer breached its duty of good faith and fair dealing to its insureds by failing timely or adequately to apprise them of the availability of the arbitration procedure. In light of this conclusion, we have no occasion to pass on the soundness of the additional bases of the trial court's rulings.

2. ■■■ *The trial court properly concluded that Blue Cross had breached its duty of good faith and fair dealing by failing to advise its insureds of the availability of, and of the procedure for initiating, arbitration; as a consequence, Blue Cross waived any right subsequently to compel its insureds to resort to arbitration.*

Three years ago, in *Madden v. Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, 706-707, our court reviewed the evolution of legal attitudes

toward arbitration in California and explained that in recent decades "arbitration has become an accepted and favored method of resolving disputes [citations], praised by the courts as an expeditious and economical method of relieving overburdened civil calendars. . . ." On this appeal, Blue Cross vigorously argues that the trial court's ruling in this case fundamentally conflicts with the spirit of our *Madden* decision and reflects an insensitivity to California's " 'strong public policy in favor of arbitration.' " (*Id.,* at p. 706 (quoting *Crofoot* v. *Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 184 [260 P.2d 156]).) The record in this case, however, demonstrates that the trial court well knew of the "favored status" of arbitration under California law, and that it denied Blue Cross' petitions because it found that Blue Cross, by deliberately pursuing a course of conduct which failed to apprise its insureds of the availability of arbitration, had forfeited or waived any right to compel its insureds to resort to arbitration.

In California's comprehensive arbitration statutes, the Legislature has explicitly provided that although voluntary arbitration agreements comply with public policy and enjoy specific enforcement under state law, a party to an arbitration agreement may by its conduct "waive" its right to compel arbitration. (Code Civ. Proc., § 1281.2.)[7] ■ As the Court of Appeal explained in *Gunderson* v. *Superior Court* (1975) 46 Cal.App.3d 138, 143 [120 Cal.Rptr. 35]: "Arbitration is a recognized and favored means by which parties expeditiously and efficiently may settle disputes which might otherwise take years to resolve. [Citations.] But this right may be lost, as any contractual right which exists in favor of a party may be lost, through a failure properly and timely to assert this right. . . . If a party wishes to compel arbitration, he must take active and decided steps to secure that right. . . ."

In the past, California courts have found a waiver of the right to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration (see, e.g., *Case* v. *Kodota Fig. Assn.* (1950) 35 Cal.2d 596, 606 [220 P.2d 912]; *Local 659, I.A.T.S.E.* v. *Color Corp. Amer.* (1956) 47 Cal.2d 189, 194-199 [302 P.2d 294]; *Bodine* v. *United Aircraft Corp.* (1975) 52 Cal.App.3d 940, 945-946 [125 Cal.Rptr.

---

[7]Section 1281.2 currently provides in this regard: "On petition of a party to an arbitration agreement alleging . . . that a party thereto refuses to arbitrate [a] controversy, the court shall order the petitioner and the respondent to arbitrate the controversy . . . unless it determines that (a) The right to compel arbitration has been waived by the petitioner. . . ."

344]) to instances in which the petitioning party has unreasonably delayed in undertaking the procedure. (See, e.g., *Sawday* v. *Vista Irrigation Dist.* (1966) 64 Cal.2d 833, 836-837 [52 Cal.Rptr. 1, 415 P.2d 816]; *Brunzell Constr. Co.* v. *Harrah's Club* (1967) 253 Cal.App.2d 764, 778-779 [62 Cal.Rptr. 505].) The decisions likewise hold that the "bad faith" or "wilful misconduct" of a party may constitute a waiver and thus justify a refusal to compel arbitration. (*Local 659, I.A.T.S.E.* v. *Color Corp. Amer., supra,* 47 Cal.2d 189, 196.)

Although a number of authorities properly caution that a waiver of arbitration is not to be lightly inferred (see, e.g., *Seidman & Seidman* v. *Wolfson* (1975) 50 Cal.App.3d 826, 835-836 [123 Cal.Rptr. 873]), our cases establish that no single test delineates the nature of the conduct of a party that will constitute such a waiver. As our court stated in *Sawday* v. *Vista Irrigation Dist., supra,* 64 Cal.2d 833, 836; "Whether there has been a waiver of a right to arbitrate is ordinarily a question of fact, and a finding of waiver, if supported by sufficient evidence, is binding on an appellate court. [Citations.]"

 In the instant case, the trial court relied on a number of circumstances in finding that Blue Cross had waived its right to compel the plaintiffs to resort to arbitration. Initially, the court found that by virtue of the obscure placement and ambiguous wording of its arbitration clause, Blue Cross had reason to know that its insureds would frequently be unaware of their right to arbitration or of the procedures by which it could be initiated. The court then found that despite this knowledge, Blue Cross had not taken any steps to apprise its insureds of such arbitration procedure. Adverting to the typical rejection letter which Blue Cross had sent to the named insureds, the trial court noted that even after learning that its insureds did not agree with its determinations as to the benefits available under the policy, Blue Cross had failed to bring the arbitration procedure to its insureds' attention. Instead it had simply reiterated in unequivocal terms its rejection of the insureds' claim.

The court found that in this context Blue Cross' failure to inform its insureds of the policy's arbitration provision amounted to an "implied misrepresentation . . . that such subscribers have no recourse but to accept the Blue Cross determination. . . ." Indeed, the court additionally determined that Blue Cross had adopted its course of conduct "for the purpose of inducing subscribers to give up their rights under the Blue Cross insurance contracts." On the basis of these cumulative findings, the court concluded that Blue Cross had breached the duty of good faith and

fair dealing owed to its insureds and that, by virtue of such breach, Blue Cross had waived its right to demand arbitration.

Blue Cross contends, of course, that the trial court erred in denying its petition for arbitration on this ground of waiver. Although the insurer concedes that even after learning of an insured's disagreement with its rejection of benefits due under the policy it took no steps specifically to apprise the insured of the arbitration provision or of the means of initiating that process, the insurer argues that the inclusion of the arbitration clause in the hospitalization policy should have been sufficient to put an insured on notice of the availability of arbitration and that it was under no additional duty to call such a remedy to its insured's attention or to explain how the remedy could be invoked.

In advancing this contention, Blue Cross ignores the special nature of the insurer-insured relationship and the resultant duties which an insurer owes to its insureds. (See, e.g., *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 668-670 & fn. 5 [79 Cal.Rptr. 106, 456 P.2d 674]; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269-270 & fns. 6, 7 [54 Cal.Rptr. 104, 419 P.2d 168].) In recent years our court has on numerous occasions reviewed the general principles governing the responsibilities of an insurer in relation to a claim filed by its insured. (See, e.g., *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 920-922 [148 Cal.Rptr. 389, 582 P.2d 980]; *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 461-462 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573-576 [108 Cal.Rptr. 480, 510 P.2d 1032].)

Very recently, in *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [157 Cal.Rptr. 482, 598 P.2d 452], we summarized these principles, noting first that in insurance contracts, as in all contractual relationships, "[i]n addition to the duties imposed on contracting parties by the express terms of their agreement, the law implies in every contract a covenant of good faith and fair dealing. [Citations.] The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement. [Citation.] The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes." In *Egan* we also pointed out that in handling claims submitted by its own insured, "[f]or the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, [*the insurer*] . . . *must give at least as much consideration to the latter's interest as it does to its own.* [Citation.]" (Italics added.) (*Id.,* at pp. 818-819.)

One important facet of the insurer's obligation to give the insured's interest "as much consideration . . . as it does . . . its own" is the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy. In particular, in situations in which an insured's lack of knowledge may potentially result in a loss of benefits or a forfeiture of rights, an insurer has been required to bring to the insured's attention relevant information so as to enable the insured to take action to secure rights afforded by the policy.

The case of *Walker* v. *Occidental Life Ins. Co.* (1967) 67 Cal.2d 518 [63 Cal.Rptr. 45, 432 P.2d 741] illustrates the insurer's duty in this regard. In *Walker*, the insured was an employee covered under the terms of a group life insurance policy obtained through his employment. Under the policy's provisions, an insured's coverage ended at the termination of his employment, but the policy afforded a terminated employee a 31-day option period in which to convert the policy into an individual policy and retain coverage. In *Walker* our court held that although no provision of the policy explicitly required the insurer to notify an insured of the date on which the 31-day option period began to run, we would imply such a duty of notification on the part of the insurer because of the serious danger that the insured would otherwise forfeit without actual knowledge his important right of conversion.

We reasoned: "[T]he privilege of converting the policy regardless of the employee's physical condition is a valuable property right . . . [and] it would be inequitable to hold that an employee may be deprived of this right without his knowledge . . . [T]he inclusion of such a clause in the policy implies an intention that the employee should have knowledge of the precise date of termination of his employment . . . . The primary responsibility for giving notice of termination rests with the [insurer], which issued the certificate to [the insured] setting forth the conversion privilege and which accepted premiums paid in reliance on that right. . . ." (67 Cal.2d at pp. 523-524.) (See, e.g., Ins. Code, § 663 (duty to inform of imminent termination of policy); *id.,* § 553 (duty to inform of any defect in notice of claim).)

As we have seen, the trial court in the instant case applied similar reasoning in concluding that the insurer's implied duty of good faith and fair dealing included a responsibility to inform its insureds of their rights under the policy's arbitration clause. Although Blue Cross suggests that such a duty cannot justifiably be imposed on an insurer with respect to

arbitration, we believe that the need for such advice is particularly pertinent in the arbitration context.

In upholding the validity of an arbitration clause negotiated by parties of relatively equal bargaining strength in *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, we pointed out that such an arbitration provision may afford important benefits to both parties to the agreement, insured as well as insurer, making available a speedy, economic and inexpensive dispute-resolution process. (17 Cal.3d at pp. 711-712. See also *Orpustan* v. *State Farm Mut. Auto. Ins. Co.* (1972) 7 Cal.3d 988, 992 [103 Cal.Rptr. 919, 500 P.2d 1119].) Under hospitalization policies, in which disputes over benefits may frequently involve a simple disagreement between the insured's physician and the insurer's medical consultant as to the reasonableness of fees or the necessity for certain medical procedures, the existence of an arbitral process will often enable the insured to obtain an impartial review of the insurer's decision without the need to incur the significant expense of legal counsel; as a consequence, the reduced cost of the process may make it practicable for the insured to secure a binding resolution of disputes over smaller claims than would otherwise be financially feasible.

It is obvious, however, that these potentially significant advantages of arbitration will accrue to insureds only if they are in fact aware of the availability of arbitration and of the means of initiating the arbitral process. The trial court in the instant case found that in the absence of timely and adequate advice as to the arbitration procedure the average insured in all likelihood would not·know of a right to arbitration buried in an obscure provision of a hospitalization policy. Although Blue Cross takes issue with this finding, we believe that the trial court's conclusion squares with common experience; in general, when an insured submits or discusses a claim with his insurer or its agent, he relies on such agent to inform him of his rights under the policy. Without advice on the subject, the average insured is not likely to be aware of a potential arbitration remedy or of the means of initiating such a procedure.[8]

[8]Although the insurer suggests that the insured's personal physician, or the treating hospital's administration, can be expected to advise an insured of the availability of arbitration, such advice may be forthcoming from these sources only if the insured himself cannot otherwise pay the outstanding medical bills. In any event, as our court made clear in *Walker* v. *Occidental Life Ins. Co., supra,* "[t]he primary responsibility for giving notice . . . rests with the [insurer], which issued the [policy affording the right to arbitration] . . . and which accepted premiums" from the insured. (67 Cal.2d at p. 524.) The insurer cannot avoid its duty by shifting responsibility for informing its insureds to other persons.

Numerous legislative provisions confirm the fact that in the insurance context specific advice as to the availability of arbitration is necessary if the arbitral process is to afford a meaningful remedy for insureds. Under the California Uninsured Motorist statutes, for example, in which the Legislature has specifically mandated the resolution of disputes by arbitration (Ins. Code, § 11580.2, subd. (f)), the Legislature has included a provision which requires the insurer to notify its insured in writing prior to the time the insured will lose his right to arbitration. (Ins. Code, § 11580.2, subd. (k).) In *State Farm Mut. Auto. Ins. Co.* v. *Lykouresis* (1977) 72 Cal.App.3d 57, 61 [139 Cal.Rptr. 827], moreover, the Court of Appeal, taking account of the realities of the situation, held that to be effective any notice given to an insured pursuant to the statute "must . . . be in plain and understandable language, and must clearly and specifically apprise" the insured of the time in which he must initiate arbitration or take other action to protect his rights. (See also *Branham* v. *State Farm Mut. Auto. Ins. Co.* (1975) 48 Cal.App.3d 27, 30-31 [121 Cal.Rptr. 304].)

Similarly, in recently enacting comprehensive legislation governing contracts between health care service plans and their subscribers, the Legislature included a number of specific provisions requiring such health service plans (1) to explicitly disclose the existence of any arbitration procedures in their informational brochures (Health & Saf. Code, § 1363, subd. (a)(10)) and (2) to include in the subscriber's contract a provision which sets forth, inter alia, "the type of disputes subject to arbitration, the process to be utilized, *and how it is to be initiated.*" (Italics added.) (Health & Saf. Code, § 1373, subd. (i).)

These statutes reflect the Legislature's recognition that an important component of any insurance arbitration procedure is a requirement that insureds be given timely and meaningful notice of the procedure so that they can realistically resort to arbitration if they decide to do so. (Cf. Health & Saf. Code, § 1368, subds. (b) and (c).)

The trial court in the instant case found that Blue Cross knew that in many instances its insureds would not be aware of the arbitration clause and that, despite this knowledge, Blue Cross deliberately decided not to inform its insureds of the arbitration procedure. In this context, the practical effect of the insurer's practice was to transform its arbitration clause into a unilateral provision, establishing a procedure to which the insurer could require its insureds to resort when Blue Cross deemed it advisable, but one that would not generally provide a speedy, economic or readily accessible remedy for the bulk of Blue Cross' uninformed insureds.

We think the trial court was fully justified in finding that Blue Cross had breached its duty of good faith and fair dealing in adopting such a course of conduct. Blue Cross clearly was not giving its insureds' interests "as much consideration . . . as . . . its own" in failing to advise them of their rights to demand arbitration of any disagreement with the insurer. Having rejected plaintiffs' claims without so much as calling to their attention their potential remedy of arbitration and having thereby compelled plaintiffs to resort to litigation, Blue Cross is now hardly in a position to reverse itself and to invoke the arbitration process which it left to repose in plaintiffs' dark ignorance.[9]

In view of the importance of timely advice of arbitrability to the basic fairness of the arbitration process, we conclude that the trial court properly determined that by its action Blue Cross waived or forfeited any right subsequently to compel its insureds to submit their disputes to arbitration.

The orders are affirmed.

Bird, C. J., Mosk, J., and Newman, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. The majority holds that, despite Blue Cross' timely demand for arbitration filed in response to plaintiffs' complaints, Blue Cross waived its right to arbitrate the disputes. The majority reasons that since the arbitration clause was "buried in an obscure provision" of the hospitalization plan agreement (*ante*, p. 429), Blue Cross was obliged to advise plaintiffs of the contents of the clause as soon as the disputes arose or suffer the consequence of waiving its right to invoke arbitration as a defense to plaintiffs' actions.

The majority's novel and unprecedented theory of waiver runs directly counter to the " 'strong public policy in favor of arbitrations,' " very recently acknowledged by us. (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706 [131 Cal.Rptr. 882, 552 P.2d 1178].) As we stated in *Madden*, ". . . arbitration has become an accepted and favored method of resolving disputes [citations], praised by the courts as an expeditious

---

[9]In *Nathan* v. *French American Bilingual School* (1969) 2 Cal.App.3d 279 [82 Cal.Rptr. 605], by contrast, defendant "repeatedly advised" plaintiff of her arbitration rights and "persisted in requesting that the arbitration procedure be followed" (2 Cal.App.3d at p. 283), and the Court of Appeal reversed a trial court finding that defendant had waived its right to compel arbitration.

and economical method of relieving overburdened civil calendars [citation]." (Pp. 706-707.) Surely we frustrate the goal of relieving our overburdened courts when we concoct a rule which results in a total waiver of arbitration on the dubious ground specified by the majority.

We recently observed that, given the policy favoring arbitration, "the courts have been admonished to 'closely scrutinize any allegation of waiver of such favored right' [citation], and to 'indulge every intendment to give effect to such proceedings' [citations]." (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 189 [151 Cal.Rptr. 837, 588 P.2d 1261].) It is further well established that the *nonaggrieved* party (such as Blue Cross in the present case) has no duty to invoke an arbitration clause prior to the commencement of judicial proceedings as a condition precedent to its right to assert arbitration as an affirmative defense.

Thus, a recent case holds that "*The party not aggrieved is not obliged to demand arbitration; but he has a right to expect that the aggrieved party will do so before he resorts to litigation.*" (*International Assn. of Bridge etc. Workers* v. *Superior Court* (1978) 80 Cal.App.3d 346, 357 [145 Cal.Rptr. 592], italics added, fn. omitted.) In the *International* case, plaintiff employer sued defendant union alleging a breach of a no-strike clause in a collective bargaining contract. The Court of Appeal properly rejected the employer's contention that union had waived arbitration by delay in demanding it, because the union promptly had raised the defense in its answer once suit was commenced against it. (See also *Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42* (1971) 4 Cal.3d 888, 899 [95 Cal.Rptr. 53, 484 P.2d 1397]; *Spence* v. *Omnibus Industries* (1975) 46 Cal.App.3d 970, 975 [119 Cal.Rptr. 171]; *Gunderson* v. *Superior Court* (1975) 44 Cal.App.3d 138, 144 [120 Cal.Rptr. 35] [defendant's assertion in its answer of plaintiff's failure to arbitrate "is a recognized, fully effective and proper means by which a party may force a dispute out of the courts and before an arbitrator"]; Annot., 25 A.L.R.3d 1171, 1187.)

One recognized authority on the subject of commercial arbitration has said, "Often a party challenges the right of the other party to avail itself of arbitration not because of noncompliance with time limits or laches, but because that party did not avail itself of the arbitration, in other words, it took no affirmative action. *However, there appears to be no duty to such action.* It was said, in this regard, 'That defendants have not demanded arbitration is no reason for a denial of a stay of the action for plaintiff may institute the arbitration proceedings.' In practice, a party respondent may wish to see a controversy settled by the arbitration

agreed upon, *but does not wish to proceed when he has no claim to advance himself.* [Italics added.] No one appears to be bound to proceed for a finding that he is *not* obligated to perform certain obligations allegedly due to the other party, in a so-called declaratory action." (Domke, The Law and Practice of Commercial Arbitration (1968) § 19.01, p. 180, fn. omitted.)

In the present case, Blue Cross promptly filed its petition to arbitrate in response to the filing of plaintiffs' complaints. As the foregoing authorities indicate, Blue Cross had no duty to initiate, demand or advise arbitration *against itself* prior to the commencement of those actions. It follows that the majority errs in concluding that Blue Cross waived its right to arbitrate by failing to invoke the same prior to filing its petition.

The majority apparently reasons, however, that since the arbitration clause was "buried in an obscure provision" of the Blue Cross hospitalization agreement, Blue Cross had the affirmative obligation to advise its subscribers, on learning of a potential dispute, regarding the necessity of arbitrating the matter. For some unexplained reason, the majority insists that the failure to give such advice has resulted in forfeiting Blue Cross' right to assert arbitration as a defense to plaintiffs' actions.

The majority errs. First, the subject arbitration clause was neither "buried" nor "obscure." The clause is set out as one of the general provisions of a four-page hospitalization plan certificate issued to all subscribers. The certificate agreement is written in plain English, is easy to understand, and contains subjects of such vital importance to the plaintiffs as the term of coverage under the plan, the services and benefits available, and the limitations imposed by Blue Cross with respect to such coverage. There is simply no basis whatever for concluding that the arbitration clause was "buried" in this uncomplicated, four-page document. The clause was not written in invisible ink. The language of the contract is explicit and it is there to be read.

Nor may we reasonably characterize the arbitration clause as "obscure." The clause provides that "The initial determination as to whether the limitations set forth herein apply so as to preclude benefits otherwise provided herein shall be made by Blue Cross; however, *if the Subscriber does not agree, then such determination shall be made by arbitration under the laws of the State of California.* Such arbitration shall be held before a designated and proper committee under the auspices of the local medical association where the hospital services and benefits in dispute were

provided. In the event that there is no such committee in the area, or the committee declines to act as arbitrator, then and in that event the same shall be submitted to the arbitration of three competent and disinterested Physicians and Surgeons actually engaged in their profession in the said area." (Italics added.)

Although there may be some uncertainties regarding the precise mechanics of the arbitration procedure, the essential purpose of the clause is clear: Disputes regarding coverage are subject to arbitration. As of the date of trial, there was no prescribed form which agreements to arbitrate must take. By explicit statutory authority "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) The Blue Cross arbitration clause incorporates the "laws of the State of California" on the subject of arbitration, a sufficient reference to the provisions of the state Arbitration Act (Code Civ. Proc., § 1280 et seq.) which sets forth in detail the procedure which governs in the absence of contrary contractual provisions (see §§ 1281.6, 1282, 1282.2; *Mitchum, Jones & Templeton, Inc.* v. *Chronis* (1977) 72 Cal.App.3d 596, 601 [140 Cal.Rptr. 160]).

It is incomprehensible to me why Blue Cross should be held to have waived a valid arbitration defense merely because it failed to remind plaintiffs of the unambiguous provisions of their very own agreement. No one suggests that plaintiffs were prejudiced in any way by Blue Cross' conduct in this case. These plaintiffs managed to find an attorney and filed their complaints; moreover, the complaints on their face acknowledge plaintiffs' prior awareness of the arbitration clause and attempt to circumvent that procedure. That the majority permits them to do so in this case represents to me a complete reversal of our recent statements in *Madden, supra,* to the effect that arbitration is a highly favored procedure, and that it disadvantages neither party but indeed confers substantial benefits to all by reason of the speed, simplicity and economy of the procedure. (17 Cal.3d at pp. 711-712.)

Significantly, *Madden* itself rejected the overly paternalistic approach presently adopted by the majority. There, speaking through the same author, we expressly declined to adopt a special rule that no arbitration clause would be enforced in the absence of proof of plaintiff's *actual knowledge* of its provisions. As we stated in *Madden,* this "proposal for a special rule which discriminates against enforcement of arbitration

clauses would be viable only if arbitration were an extraordinary procedure, and one especially disadvantageous for the [health plan] beneficiary—*propositions which we have rejected* . . . ." (17 Cal.3d at p. 709, fn. 11, italics added.)

The majority now inexplicably reverses *Madden*'s enlightened approach and requires affirmative steps to assure such actual knowledge by Blue Cross subscribers, on the odd theory that a failure to do so would amount to a breach of "good faith and fair dealing." Significantly, the majority does not explain how a failure to advise a subscriber regarding his arbitration rights properly may constitute a waiver of those rights by Blue Cross. Nor does the majority explain why plaintiffs are not bound by the plain language of their contract. If, as the majority concedes (*ante,* p. 429), the arbitration procedure contains "potentially significant advantages" to the subscribers, surely Blue Cross' demand for arbitration should be welcomed, not met with protests of "bad faith."

I would treat plaintiffs with considerably more respect than does the majority and assume, consistent with *Madden,* that they were fully capable of reading their agreements and abiding by their provisions. Plaintiffs were not misled. Like other contracting parties, they should be bound by the terms of their agreements. Further, we should create no special waiver rule which will prevent arbitration and thereby aggravate rather than relieve our overcrowded court calendars.

I would reverse the judgment denying Blue Cross' petition for arbitration.

Clark, J., and Manuel, J., concurred.