Lorna R. TOLEDO and Rudy L. Toledo, Plaintiffs,

v.

KAISER PERMANENTE MEDICAL GROUP, et al., Defendants.

No. C–96–20363 SW.

United States District Court, N.D. California.

Feb. 12, 1997.

Arthur A Groza, Arthur A. Groza Law Offices, San Francisco, CA, for Plaintiffs.

Kennedy P. Richardson, Yvonne M. Pierrou, Oakland, CA, for Defendants.

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND TO STATE COURT; GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION

SPENCER WILLIAMS, District Judge.

Plaintiffs ask this Court to remand their case to state court, arguing that ERISA does not preempt their state law claims. For the reasons set forth below, this Court DENIES Plaintiffs' motion. In addition, Defendants

ask this Court to compel arbitration and stay the proceeding pursuant to an arbitration clause in the health care agreement signed by Mr. Toledo. For the reasons set forth below, this Court GRANTS Defendants' motion to compel arbitration and STAYS this proceeding.

## BACKGROUND

Plaintiffs Lorna and Rudy Toledo are members of Kaiser Foundation Health Plan, Inc. ("Health Plan"), a non-profit health maintenance organization licensed under the Knox–Keene Health Care Service Plan Act, Cal. Health & Safety Code § 1340 *et seq.*, and federally qualified under the Health Maintenance Organization Act, 42 U.S.C. § 300e *et seq.* Plaintiffs have sued Health Plan and its contracting providers, the Permanente Medical Group, Inc. (provider of medical services), and Kaiser Foundation Hospitals (provider of hospital services), (collectively "Kaiser" or "Defendants") for breach of contract, breach of the implied covenant of good faith, fraud, and infliction of emotional distress. Plaintiffs' claims arise from Health Plan's denial of Ms. Toledo's request that Health Plan pay for surgical and hospital benefits at Stanford Medical Center.

In the fall of 1994, Mr. Toledo was hired by Stanford Linear Accelerator Center ("SLAC"), and effective November 1, 1994, the Toledos, who had previously been insured under a Kaiser plan connected with Mr. Toledo's employment at a temporary agency, transferred their health care coverage to the Group Medical and Hospital Service Agreement entered into between Stanford (for its SLAC bargaining unit) and Health Plan (the "Stanford Agreement" or "Service Agreement"). Health Plan is the named fiduciary under the Service Agreement for deciding benefits claims.

Section 8 of the Agreement is an arbitration provision requiring that any and all claims against Health Plan arising out of or incident to the Service Agreement be resolved through final and binding arbitration. Mr. Toledo signed his name under a declaration recognizing the validity of the arbitration clause. Health Plan also provided Stanford with employee brochures discussing the arbitration provision.

From November 1, 1994 to late 1995, the SLAC group paid the premiums for the Toledos. The Toledos themselves nor Mr. Toledo's previous employer, the temporary agency, paid any premiums from November 1, 1994 onwards, premiums which would have sustained a "conversion account" with the temporary agency's Kaiser health plan.

A few months after Mr. Toledo began working at SLAC, Mrs. Toledo needed surgery to correct a digestive problem. On February 13, 1995, Health Plan refused to authorize the surgery, scheduled to be performed at Stanford University Hospital two days later. The Toledos borrowed $22,400 to pay the hospital admission charge and the surgeon waived his fee. The Toledos state that they made several phone calls protesting the denial, but they do not specify whom nor when they called. They never submitted to Kaiser a written or formal appeal.

Rather than submitting the matter to arbitration, the Toledos filed this action in state court alleging state law causes of action. Kaiser filed a notice of removal to federal court on the ground that all of Plaintiffs' claims are summarily preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and are removable under *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Plaintiffs now move to remand the case to state court. Defendants oppose the motion and move to compel arbitration.

## DISCUSSION

### 1. PLAINTIFFS' MOTION TO REMAND.

Plaintiffs contend that remand is proper because (1) ERISA does not govern the health plan operative at the time Kaiser denied the hospital and surgical benefits, (2) even if ERISA governs, it does not preempt their state law claims, and (3) even if ERISA governs, the "savings clause" of ERISA would take their claims out of ERISA's scope anyway.

### a. *The Toledos' Health Care Plan Is an ERISA Plan*

Plaintiffs assert that their insurance coverage with Kaiser is not an ERISA plan. They

base their argument in large part on the premise that Mr. Toledo's Kaiser plan through his former employer, the temporary agency, was the plan operative at the time of the claim denial. However, all the evidence submitted by the parties shows that Plaintiffs transferred their Health Plan coverage to the Stanford Agreement effective November 1, 1994, well before Kaiser denied payment for Mrs. Toledo's February 13, 1995 surgery. Thus, the Stanford Agreement provides the basis for Plaintiffs' claims.

ERISA covers employee welfare benefit plans. 29 U.S.C. § 1001(b). An employee welfare benefit plan is defined as a plan maintained by an employer for the purpose of providing for its participants, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits. 29 U.S.C. § 1002(1). The Stanford Plan provides for medical, surgical, and hospital care benefits for SLAC employees and is clearly a "employee welfare benefit plan" as defined by ERISA. Plaintiffs present no argument to the contrary.[1]

### b. The Toledos' Claims Are Preempted by ERISA

■ Although Plaintiffs attempt to put a strong "spin" on their contract and tort claims in an attempt to distance them from the broad expanse of ERISA, the following analysis shows that the claims fall easily within ERISA's ballpark.

■ ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). ERISA preempts state law causes of action pertaining to improper handling of insurance claims under an employee benefit plan. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Supreme Court has held that the words "relate to" in the statute should be construed expansively. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987). A law "relates to" an employee benefit plan "in the normal sense of the phrase, if it has a con-

nection with or reference to such a plan." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d · 728 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983).

■ However, ERISA preemption is not all-encompassing. *Lane v. Goren*, 743 F.2d 1337, 1339 (9th Cir.1984); *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1322 (9th Cir.1992), *cert. denied*, 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993). State law causes of action that bear only a "tenuous, remote or peripheral" relationship to an employee benefits plan are not preempted by ERISA. *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. A complaint may be removed to federal court if it pleads a claim "completely preempted" by ERISA. *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1547–48. In deciding whether state law claims are completely preempted by ERISA, the court must consider whether the claims are "to recover benefits due ... under the terms of the plan, to enforce ... rights under terms of the plan, or to clarify ... rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

■ Removal is improper where plaintiffs do not claim that a plan erroneously withheld benefits due, but rather claim malpractice, attacking the quality of the benefits they actually received. *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 356–57 (3d Cir.), *cert. denied* 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995) (finding no preemption where plaintiffs attempted to hold HMOs liable for their role as arrangers of their decedents' medical treatment); *Roessert v. Health Net*, 929 F.Supp. 343 (N.D.Cal.1996) (holding that ERISA does not preempt a claim based on the giving of improper medical advice).

■ On the other hand, where a party protests the denial of a benefit, ERISA preempts the claim. *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1331 (5th Cir.), *cert. denied*, 506 U.S. 1033, 113 S.Ct.

---

**1.** At oral argument, Plaintiffs conceded that SLAC is not a government entity, thus disposing of their argument that SLAC is a governmental body whose employee benefits plans are exempt from ERISA.

812, 121 L.Ed.2d 684 (1992) (noting that ERISA is implicated in "utilization review" decisions but not medical-treatment decisions); *Kuhl v. Lincoln Nat. Health Plan, Inc.*, 999 F.2d 298, 303 (8th Cir.1993), *cert. denied*, 510 U.S. 1045, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *Elsesser v. Hospital of Philadelphia College of Osteopathic Medicine*, 802 F.Supp. 1286, 1290–91 (E.D.Pa. 1992) (holding that ERISA preempted claim that HMO withheld benefits, but did not preempt claims against the HMO for its negligent selection, retention, and evaluation of primary-care physician).

At oral argument, Plaintiffs strained to shoehorn their claims into the *Dukes* domain by characterizing theirs as "quality of care" claims rather than "denial of benefits" claims. The Court is not persuaded. Plaintiffs do not allege any type of malpractice in their Complaint. Moreover, the Medical Group provided no medical advice, as in *Roessert*, or service, as in *Dukes*. Rather, Kaiser refused to authorize surgery at a non-Kaiser facility. A failure to authorize payment does not necessarily amount to a medical judgment to forego surgery. If that were so, every denial of benefits could be construed as a denial of care, and therefore outside of the scope of ERISA. Such an expansive view of the *Dukes* rule would obliterate the rule of preemption whenever an ERISA fiduciary denied a claim.

In addition, all of Plaintiffs' claims inevitably require proof that Health Plan wrongfully breached the ERISA plan by denying benefits, an inquiry preempted by ERISA. The breach of contract claim is based on an allegation that Health Plan breached the Service Agreement by failing to pay for surgical benefits. The bad faith claim is based on an allegation that the denial of benefits, and Health Plan's handling of the benefit claim, amounted to bad faith. The emotional distress claim is based on an allegation that the denial of the claim was outrageous and caused emotional distress. The fraud claim is based on an allegation that defendants fraudulently promised to provide needed medical care, and then failed to do so by denying the benefit claim. The claims all meet the "relate to" test.

 Plaintiffs attempt to distinguish their bad faith and fraud claims by arguing that they are premised on the Medical Group's bonus scheme that provides doctors incentives to limit their number of hospital admissions, thereby causing a breach in the doctor-patient relationship, and somehow altering the terms of the policy Mr. Toledo had signed. ERISA preempts fraud allegations against an HMO for failing to explain its incentive structure. *Anderson v. Humana, Inc.*, 24 F.3d 889, 891 (7th Cir.1994). Such claims relate to ERISA because they amount to a state law attempt to regulate the content of the summary plan description and other information provided by the ERISA plan to employees:

> "A claim that the literature distributed as part of a plan's administration is incorrect, or that employees were fraudulently induced to pick one option under a plan rather than another, lies comfortably within the zone of exclusive federal control." *Id.*

Here, the Toledos allege a "bait and switch": they bargained for one plan, but received another, a plan substantially altered by the existence of pressures to reduce the number of costly hospital admissions. Under *Anderson*, this claim, no matter whether characterized as fraud, breach of fiduciary duty, or bad faith, is preempted by ERISA. Furthermore, the Court agrees with Defendants that if all it took to avoid ERISA preemption was an allegation that the plan or its agent had a financial interest in denying benefits, no state law bad faith or fraud claim would be preempted and *Pilot Life* would be a dead letter.

In sum, the Toledos' state law claims "relate to" the benefit plan since all of the claims arise directly from the denial of benefits. Because ERISA provides the only remedy for a denial of benefits, 29 U.S.C. sec. 1132(a), the entire case may be removed on "complete preemption" grounds.

### c. The Toledos' Claims Are Not Saved From Preemption

 Plaintiffs argue that their claims are predicated on state law which falls within the so-called "saving clause" of ERISA. This clause saves from preemption state laws regulating insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A). The Toledos allege only common law contract and tort claims. Their Complaint is devoid of any allegation that Kaiser violated sections of the Insurance Code or the Knox–Keene Act by allegedly using incentives to deny benefits. Plaintiffs wedged that argument into their moving papers. Removal depends on the pleadings when the case is removed, not on afterthoughts in remand papers. *See Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1065 (9th Cir.1979).

Thus, Plaintiffs' motion to remand is DENIED.

## 2. MOTION TO COMPEL ARBITRATION AND STAY ACTION

Now that the Court has denied the motion to remand, and maintains its jurisdiction over the case, it must determine whether to stay the federal court action pending the arbitration called for in the Toledos' Stanford Agreement.

■ The FAA grants the courts power to specifically enforce contractual arbitration agreements. Section 2 of the FAA mandates enforcement of arbitration provisions in any "contract evidencing a transaction involving commerce. . . ." 9 U.S.C. § 2. So long as the contract has any effect on commerce, the contract "evidences a transaction involving commerce." *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 841, 130 L.Ed.2d 753 (1995). Plaintiffs argue that their contract has no link to interstate commerce. However, the Stanford Agreement evidences a number of links to interstate commerce sufficient to invoke the application of the FAA. For example, the Agreement provides for general health care and emergency coverage when the participant is in another region or another state. In addition, performance of the contract implicates interstate commerce in that many of Kaiser's physicians are recruited from out of state and many necessary supplies and medications are shipped from out of state.

Plaintiffs also appear to argue that because the Stanford Agreement is a health contract, and not a "commercial contract," this Court should find that California law, and not the FAA, applies. Plaintiffs cite no authority for the proposition that health care contracts are not commercial in nature and thus somehow exempted from the FAA. Common sense dictates otherwise. Plaintiffs' argument is frivolous and must fail.

■ Plaintiffs next argue that their tort claims fall beyond the scope of the arbitration clause. This argument also lacks merit. Section 8 of the Agreement provides for arbitration of any "claim aris[ing] from alleged violation of any duty incident to or arising out of this Agreement, including any claim for medical or hospital negligence . . . irrespective of the legal theories upon which the claim is asserted." This broad language covers Plaintiffs' tort claims, all of which "arise out of" Kaiser's denial of benefits.

■ Plaintiffs next argue that Kaiser has breached its duty of good faith, resulting in its forfeiture of the contractual right to arbitration.[2] They contend that after the denial of authorization for surgery at Stanford, more than 16 months elapsed before Kaiser or Defense counsel suggested arbitration. California law precludes an insurer[3] from invoking an arbitration provision when it has failed to adequately inform the insured of that provision. *Davis v. Blue Cross of Northern Calif.,* 25 Cal.3d 418, 158 Cal.Rptr. 828, 600 P.2d 1060 (1979); *Sarchett v. Blue Shield of Calif.,* 43 Cal.3d 1, 4, 233 Cal.Rptr. 76, 729 P.2d 267 (1987). In *Davis,* the policy's arbitration provision was obscurely placed in fine print. In *Sarchett,* the clause was adequately set out, but the insurer failed to remind the insured of the arbitration provision after exchanges of letters protesting a claim denial. Thus, "even if the insured is aware of the arbitration right, bad faith tactics designed to mislead the insured merit the sanction of forfeiture." *Chase v. Blue*

---

**2.** Plaintiffs also argue that Kaiser "waived" its right to arbitration, but they do not allege that in the sense that Kaiser intentionally relinquished a known right. *See Chase v. Blue Cross of Calif.,* 42 Cal.App.4th 1142, 1148–49, 50 Cal.Rptr.2d 178 (1996).

**3.** The Court will assume for the purposes of this motion that Kaiser qualifies as an "insurer."

*Cross of Calif.*, 42 Cal.App.4th 1142, 1157, 50 Cal.Rptr.2d 178 (1996). An insurer does not forfeit its right to arbitration where it does not engage in behavior designed to mislead the insured. *Id.* An insured must prove by clear and convincing evidence that the insurer in bad faith intended to mislead the insured about the right to arbitrate. *Id.*

Plaintiffs fail to prove by clear and convincing evidence, or even a preponderance of the evidence, that Kaiser failed to adequately notify them of the arbitration provision.[4] Mr. Toledo signed his name immediately beneath a conspicuous and clear arbitration provision in the Agreement. Kaiser provided brochures that gave Plaintiffs additional notice of arbitration. Plaintiffs allegedly made several phone calls to Kaiser to protest the denial of benefits, but they do not establish when these were made or to whom the complaints were made. Plaintiffs submit no evidence that they had submitted a formal claim or had made an internal appeal or other attempt to resolve this dispute before filing their Complaint. Plaintiffs must have been aware of the arbitration clause at some point before filing their case, as their Complaint, filed on April 10, 1996 itself alludes to the arbitration clause.

Accordingly, Defendants' motion to compel arbitration is GRANTED.

## CONCLUSION

The Court DENIES plaintiffs' motion to remand and ORDERS arbitration of all claims brought by Plaintiffs in this action in accordance with the arbitration provision in the group medical and hospital service agreement under which Plaintiffs were enrolled. All proceedings in this action are STAYED pending completion of that arbitration.

IT IS SO ORDERED.

---

4. The Court agrees with Defendants that it can be fairly inferred that Plaintiffs purposefully kept Health Plan in the dark about their claim so that they could then assert a *Davis* forfeiture.