**Patricia J. ROESSERT and Albert F. Roessert, Plaintiffs,**

v.

**HEALTH NET, Dr. Ging Long Wang, Dr. Jonathan Rest, Hill Physicians Medical Group, and Does 1 through 50, Defendants.**

**No. C–95–0604 MHP.**

United States District Court, N.D. California.

Jan. 31, 1996.

Mark O. Hiepler, Hiepler & Hiepler, Oxnard, CA, for Patricia J. Roessert and Albert F. Roessert.

Firouzeh L. Gohari, Vogt Meadville & Swallow, Woodland Hills, CA, for Health Net.

Thomas E. Pfalzer, Joseph E. Finkel, McNamara Houston Dodge McClure & Ney, Walnut Creek, CA, for Dr. Ging Long Wang.

Lynne P. McGhee, David T. Shuey, Rankin Sproat & Pollack, Oakland, CA, for Dr. Jonathan Rest.

Jacqueline deSouza, Kathleen Kresnak, Larson & Burnham, Oakland, CA, for Hill Physicians Medical Group.

### MEMORANDUM AND ORDER

PATEL, District Judge.

Plaintiffs, Patricia and Albert Roessert, participants in Bank of America's ("BOA") employee health benefits program, filed a complaint in Contra Costa Superior Court alleging general and medical negligence in defendants' treatment of Patricia Roessert. Defendants Hill and Health Net timely removed to this court pursuant to 28 U.S.C. § 1446(a) on the grounds that the claims against them were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and that ERISA confers federal question jurisdiction on this court. Now before the court are motions by all the named defendants to dismiss the amended complaint for failure to state a claim and a cross-motion by plaintiffs to remand the action to state court.

Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

## BACKGROUND [1]

Patricia and Albert Roessert both worked for BOA when BOA contracted with Health Net to provide medical and health insurance coverage to its employees. Plaintiffs do not dispute that the BOA plan is an employee benefit plan governed by ERISA. Health Net is a federally qualified Health Maintenance Organization ("HMO") and a California health care service plan composed of a network of community medical groups. Hill Physicians Medical Group ("Hill") is a participating medical group ("PMG"). A PMG is a group of physicians which has an agreement with Health Net to furnish care to Health Net subscribers. Each Health Net subscriber is required to select a PMG. The relationship between Health Net and the PMG is that of an independent contractor; PMG member physicians and other professionals are not agents or employees of Health Net.

Patricia and Albert Roessert became Health Net members in 1992 and selected Hill as their medical group under the Health Net plan. In early 1993, Mrs. Roessert began suffering from fatigue and depression and was initially treated by her primary care physician, Dr. O'Connor. According to the amended complaint, by late 1993 Mrs. Roessert was markedly worse and in December of that year Dr. O'Connor referred her to Hill for treatment of chronic fatigue syndrome ("CFS"). Hill, in turn, referred the Roesserts to Pacific Applied Psychology Associates, where Mrs. Roessert saw psychiatrist Dr. Wang. At that time Dr. Wang prescribed medication for Mrs. Roessert which apparently exacerbated her problems. Plaintiffs allege that when Mrs. Roessert asked Dr. Wang to modify the dosage or change the medication he refused. Mrs. Roessert then sought a referral to another psychiatrist and, according to plaintiffs, Hill could not provide one and suggested they look at another PMG.

Sometime in 1994 Mrs. Roessert was diagnosed with CFS and placed on disability. She was also referred to Dr. Rest, a member of Alta Bates Medical Group and a specialist in CFS (the amended complaint does not

---

**1.** Except where noted, the facts in this section are taken from undisputed portions of previous submissions by the parties and the plaintiffs' amended complaint.

identify who referred the Roesserts to Dr. Rest). At this time, Health Net indicated to the Roesserts that a change in primary physicians would require a change in medical groups. According to the complaint, plaintiffs switched to Alta Bates at the direction of Health Net.

On July 1, 1994 Mrs. Roessert met with Dr. Rest. The complaint asserts that Dr. Rest treated her rudely and refused to accept her as a patient because Alta Bates' repayment practices were inadequate and he could not afford new CFS patients. Subsequent to this visit, Mrs. Roessert apparently became more despondent and withdrawn, causing Mr. Roessert to contact Health Net to complain of Dr. Rest's conduct and to switch back to Hill. Health Net allegedly refused to authorize the switch.

According to plaintiffs, on September 9, 1994, someone at Health Net, unprompted by the Roesserts, directed Hill to contact the Roesserts for the purpose of committing Mrs. Roessert to a psychiatric institution. That same day, a Hill physician, Dr. Philipson, called Mr. Roessert at home to say she was calling to assist in committing Mrs. Roessert due to suicidal tendencies. Dr. Philipson also left a message to that effect at the Roessert home. Mr. Roessert called Health Net and was unable to receive an explanation for the conduct of either Hill or Dr. Philipson, but apparently was told that a nurse at Health Net might have contacted Hill about Mrs. Roessert.

Health Net denies this account. Health Net maintains that on September 9, 1994 Mr. Roessert had a lengthy telephone conversation with Health Net personnel about Mrs. Roessert's condition and his dissatisfaction with her medical care. Health Net admits to contacting Hill on September 9, 1994 to ask them to provide care to Mrs. Roessert. Health Net denies that it ever instructed anyone to commit Mrs. Roessert.

Thereafter, the Roesserts filed an action against defendants in Contra Costa Superior Court alleging negligence and fraud. Defendants removed to federal court on the basis of ERISA preemption and proceeded to file motions to dismiss for failure to state a claim, to dismiss Mr. Roessert for lack of standing and for summary judgment. At a hearing on these motions, this court continued the motions and directed the parties to a magistrate judge to discuss settlement and to assist plaintiffs, who were pro se, in understanding the process and the viability of their claims in the event the parties could not settle. A settlement was not reached and on October 30, 1995, plaintiffs, who were able to obtain counsel in the interim, filed an amended complaint.[2] The amended complaint alleges medical negligence and negligent and intentional infliction of emotional distress against all the defendants. The previously pending motions are rendered moot and the court will address only the current motions based on the amended complaint.

## LEGAL STANDARD

■ A motion to dismiss will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.), *cert. denied sub. nom. Wyoming Community Dev. Auth. v. Durning*, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987).

A motion to remand requires the court to assess whether it has removal jurisdiction over an action. As a general rule, an action

---

**2.** Alta Bates Medical Group, originally a defendant, was not included in the amended complaint. At a case management conference on November 3, 1995 plaintiffs indicated that they wished to dismiss Alta Bates as a defendant and this court approved that dismissal.

is removable to a federal court only if it might have been brought there originally. 28 U.S.C. § 1441(a). Defendants assert that ERISA confers jurisdiction over this action under 28 U.S.C. § 1446(a) and that therefore removal was proper.

## DISCUSSION

With the exception of Dr. Rest, who bases his motion to dismiss on the plaintiffs' failure to adequately allege state law claims, the defendants contend that all the actions complained of were taken in the context of administering benefits under an employee benefit plan and are preempted by ERISA. The Roesserts maintain that their complaint is based on the quality of medical care provided by defendants, is unrelated to their right to benefits under the plan and that the action should therefore be removed to state court.

The question before this court is whether the state law causes of action pled in the complaint are based purely on medical decisions made by defendants which do not invoke federal jurisdiction or whether defendants' actions, as alleged, relate to benefit determinations and should be recharacterized as federal claims and subject to ERISA preemption.

## I. *Motion to Remand*

### A. *Analytical Framework*

The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, provides a unique federal framework for the regulation of employee pension and benefit plans. In order to ensure that pension and benefit plans would be an exclusively federal concern, Congress included a "deliberately expansive" preemption provision as part of ERISA. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1551–1552, 95 L.Ed.2d 39 (1987); *see also General American Life Ins. Co. v. Castonguay,* 984 F.2d 1518, 1521 (9th Cir.1993) (noting that ERISA's preemption is one of the broadest ever enacted by Congress).

Section 514(a) of ERISA broadly preempts all state laws which "relate to" any employee benefit plan. 29 U.S.C. § 1144(a).[3] A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). The Supreme Court has given expansive effect to section 514(a), holding that a state law need not explicitly refer to employee benefit plans in order to be preempted; it also need not be specifically designed to affect benefit plans. *Pilot Life,* 481 U.S. at 47–48, 107 S.Ct. at 1552–1553. State law claims which arise either directly or indirectly from the administration of the plan are preempted. *Gibson v. Prudential Ins. Co. of America,* 915 F.2d 414, 416 (9th Cir.1990); *see also Pilot Life,* 481 U.S. at 57, 107 S.Ct. at 1558 (ERISA preempts all common law causes of action arising from improper handling of claim for benefits under ERISA plan).

Preemption, however, is not the same thing as jurisdiction. Cases that raise a federal question are removable to federal court on the basis of the district court's original jurisdiction. 28 U.S.C. § 1441(a). The availability of removal is limited by the well-pleaded complaint rule, which permits removal only when a federal question is presented on the face of a properly pleaded complaint. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983) (citing *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)). Because federal preemption is normally a defense and as such would not appear on the face of plaintiff's complaint, it is generally not sufficient to allow removal to federal court. *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (citing *Gully v. First Natl. Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)).

---

**3.** For the purposes of section 514(a), state law includes "all laws, decisions, rules, regulations or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). The Supreme Court has held that, for ERISA preemption purposes, state law includes both statutory law and common law. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–1553, 95 L.Ed.2d 39 (1987).

However, Congress can so completely preempt a given area of law that any action that comes within it, even though couched as state law claims, must be characterized as federal and may be removed to federal court notwithstanding the well-pleaded complaint rule. *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. at 1546. The Supreme Court has concluded that section 502 of ERISA is such an area of sweeping preemption. *Id.* at 67, 107 S.Ct. at 1548. This does not mean, however, that all claims which are subject to ERISA preemption are automatically removable. The Supreme Court, citing its earlier opinion in *Franchise Tax Board,* noted in *Metropolitan Life* that "ERISA pre-emption, without more, does not convert a state law claim into an action arising under federal law." *Id.* at 64, 107 S.Ct. at 1547. Furthermore, the *Franchise Tax Board* Court found that section 514 of ERISA, unlike the civil enforcement provisions of section 502, decidedly did not preempt all state causes of action relating to ERISA plans. *Franchise Tax Board,* 463 U.S. at 25, 103 S.Ct. at 2854. Therefore, while section 514 may provide a defense of federal preemption, it is still subject to the well-pleaded complaint rule and does not necessarily confer federal jurisdiction. Conversely, claims that come within the scope of section 502 are subject to complete preemption and automatically removable to federal court. The circuit courts appear to be in accord that the defensive preemption available under section 514 is alone insufficient for removal to federal court. *See e.g., Rice v. Panchal,* 65 F.3d 637, 639–42 (7th Cir.1995) (exhaustively analyzing the difference between "conflict preemption" under section 514(a) and "complete preemption" under section 502(a) and noting that complete preemption creates federal question jurisdiction while conflict preemption does not); *Warner v. Ford Motor Co.,* 46 F.3d 531, 535 (6th Cir.1995); *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 272–73 (2d Cir.1994). As the Third Circuit concluded in *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350 (3rd Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995), "[w]hen the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempt

under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption." *Id.* at 355. Therefore, this court must first consider plaintiff's motion to remand as it determines whether removal was proper and whether this court has jurisdiction.

Defendant Hill, in its opposition to plaintiff's motion to remand, objects to using the present amended complaint as the basis on which to judge the existence of removal jurisdiction. However, while generally removal jurisdiction is based on the complaint as originally filed, *see O'Halloran v. University of Wash.,* 856 F.2d 1375, 1379 (9th Cir. 1988) (citing *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1065 (9th Cir.1979)), in this case the original complaint was prepared pro se without the benefit of any legal advice and it was unclear whether jurisdiction was proper. It was under the direction of this court that plaintiffs amended the complaint eventually with the assistance of counsel. Given the unique circumstances that led to the amended complaint and the leniency afforded to plaintiffs in their position, the motion to remand will be determined according to the amended complaint. Furthermore, even if jurisdiction had been proper at the time of removal based on the original complaint, subject matter jurisdiction can always be raised before judgment is entered. If at any point prior to final judgment the court determines that it lacks subject matter jurisdiction, it must remand the action to state court. 28 U.S.C. § 1447(c). The issues raised in the present motions go to subject matter jurisdiction.

In deciding whether state law claims come within the scope of section 502(a), and are therefore completely preempted by ERISA, the court must consider whether the claims are "to recover benefits due ... under the terms of the plan, to enforce ... rights under terms of the plan, or to clarify ... rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Recently the Third Circuit, in *Dukes,* found that a claim about the *quality* of a benefit was not a claim under section 502(a), noting that nothing "in the legislative history, structure, or purpose of ERISA suggest that Congress

viewed § 502(a)(1)(B) as creating a remedy for a participant injured by medical malpractice." *Dukes,* 57 F.3d at 357. In confronting a similar issue, the Fifth Circuit held that the medical decisions made by an HMO were preempted by ERISA because they were made in the context of a benefits determination under the plan. *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1331 (5th Cir.), *cert. denied,* 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992). In *Corcoran,* a woman brought a wrongful death action for the loss of her fetus after the plaintiff's HMO determined that the recommended hospitalization of plaintiff was unnecessary under a cost containment program known as utilization review. The *Dukes* court distinguished *Corcoran* on the ground that the medical decisions made by the HMO in that case were purely a function of its administrative role, while the HMO in *Dukes* not only performed an administrative role, but also arranged for the medical treatment of plan participants. According to the Third Circuit, to the extent a complaint alleges liability for actions taken solely in this latter role, ERISA does not apply and the court lacks removal jurisdiction. *Dukes,* 57 F.3d at 361. In the absence of Ninth Circuit authority on point, this court finds *Dukes* persuasive and applies it to the instant action.

## B. *Analysis*

### 1. *Health Net*

The Roesserts allege that Health Net acted negligently in calling Hill to have its doctors assist in committing Mrs. Roessert because they were acting outside the bounds of the plan and without adequate medical knowledge. The facts cited in the complaint also include the allegation that Health Net directed the Roesserts to switch their PMG to Alta Bates for the purpose of consulting with Dr. Rest, although that act is not specifically included in any of the causes of action. Plaintiffs also bring causes of action for negligent and intentional infliction of emotional distress for the above acts. However, the September 9 telephone call appears to be the chief of plaintiffs' three claims against Health Net.

Health Net contends that all three causes of action against it arise from the contact it made with Hill as a contracting medical group in an effort to ensure that it was providing the necessary benefits to Mrs. Roessert; in other words, all the events of September 9, 1994 related to the administration of benefits under an ERISA plan. The Roesserts maintain that Health Net was not administering benefits but rather "was practicing medicine without a license" when it originated a request to Hill which led to Dr. Philipson's call to Mr. Roessert.

Rather than cite cases that would support a characterization of its actions as administrative, Health Net relies on authority that provides for ERISA preemption of administrative acts by HMOs. That, unfortunately, is not at issue. At the same time, Health Net contends that *Dukes* is inapplicable because it is a removal decision. Yet a removal decision is entirely relevant to a motion to remand. In support of this court's jurisdiction Health Net offers sweeping statements of the force of section 502(a) without explanation of why that section applies.

Despite the serious deficiencies in Health Net's opposition to plaintiffs' motion to remand, however, it is not self-evident from the complaint that Health Net was acting entirely outside its role as a benefits administrator under the ERISA plan when it contacted Hill. Its actions might well be characterized as arranging for one of the medical groups with which it contracted under the plan to have a doctor contact the Roesserts for the purpose of providing medical care and treatment. If so, the court must determine whether the alleged negligent medical advice was inextricable from its actions coordinating benefits and services under the plan.

Assuming that plaintiffs can establish that Health Net in fact advised Hill to assist in committing Mrs. Roessert in the absence of any such request by plaintiffs, this courts concludes that that advice was not related to its administrative role. As in *Dukes,* plaintiffs here only attack the *quality* of the benefits they received; they make no claim for benefits or enforcement of rights under the plan that would bring the action within the ambit of section 502. Plaintiffs

make no allegation that Health Net should be liable for contacting Hill or for arranging for Hill to provide medical treatment for Mrs. Roessert. Their only complaint relates to the kind of treatment Health Net allegedly recommended and the basis for that recommendation. Nothing in plaintiffs' complaint implicates Health Net's role as an administrator, but only as a provider of medical treatment. Likewise, defendant points to no right under the plan that is implicated by plaintiff's claim. *See also, Lupo,* 28 F.3d at 272 (remanding malpractice case because claims bore no resemblance to those described in section 502(a)(1)(B) of ERISA). In *Dukes* two cases were consolidated: in one a hospital refused to perform the blood tests a doctor ordered and plaintiff died, and in the other a doctor ignored symptoms of preeclampsia in a pregnant woman and the child was stillborn. These were clear medical decisions similar to Health Net's alleged decision to recommend committing Mrs. Roessert.

Health Net, in its opposition to plaintiffs' motion to remand, relies mainly on preemption cases arising under section 514(a). As noted above, these cases are not decisive in the context of determining removal jurisdiction. The present inquiry is whether the claims come within the scope of section 502 and require federal adjudication. In its motion to dismiss, Health Net cites *Corcoran* for the proposition that its actions should be characterized as administrative, because they were made in the context of a benefits determination. While *Corcoran* was also decided under section 514(a) and came before the Fifth Circuit with a more detailed record, it is instructive for its framework, which distinguished medical decisions from administrative decisions. While the *Corcoran* court found that the actions at issue involved medical decisions, it held that defendant made those decisions "as part and parcel" of its mandate to decide what benefits were available under the plan and were therefore governed by ERISA. *Corcoran,* 965 F.2d at 1332. This case does not present the same inextricable relationship in Health Nets actions. Unlike the utilization review at issue in *Corcoran,* nothing in Health Net's duty to administer benefits to plaintiffs in the present case required it to make medical judgments. It would have been enough to contact Hill and request that they in turn contact the Roesserts.

Moreover, plaintiffs' traditional state law causes of action do not require reference to an ERISA plan to resolve them. This inquiry is borrowed from analysis of section 301 of the Labor Management Relations Act ("LMRA"), which the Supreme Court has used to interpret the preemptive scope of section 502(a) of ERISA. *See e.g., Metropolitan Life,* 481 U.S. at 64–66, 107 S.Ct. at 1546–1547. The Seventh Circuit, in determining whether a suit brought by an ERISA plan participant falls under section 502(a)(1)(B), surveyed Supreme Court cases involving section 301 of the LMRA and concluded that "complete preemption is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Rice,* 65 F.3d at 644. Thus the appropriate inquiry is whether the claim "rests upon the terms of the plan" or requires construction of plan language. *Id.* at 644–45 (citing *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988)). In the present action, the question of whether Health Net's alleged recommendation of specific treatment for Mrs. Roessert was negligent can surely be decided apart from the terms of the plan.

Finally, since the disputed action does not require interpretation of the plan, there is no reason to believe that state resolution of the disputed medical decision would affect the important uniformity of federal ERISA law. Rather, it falls within the familiar purview of state tort law. Accordingly, the court holds that the causes of action pled against Health Net do not come within the ambit of section 502(a)(1)(B) and this court is therefore without jurisdiction to hear them.

## B. *Hill*

The Roesserts allege that Hill was also negligent in contacting plaintiffs for the purpose of committing Mrs. Roessert and that its actions amount to negligent and intention-

al emotional distress. Hill maintains that all of the causes of action against it "relate to" the employee benefit plan and therefore are preempted by ERISA.

■ Compared to Health Net, there are far fewer indications that Hill's dealings with the Roesserts were for the purpose of making determinations about plan coverage and available benefits. Again, the only allegations against Hill in the amended complaint concern the September 9 telephone call from Dr. Philipson to the Roessert home and to Mr. Roessert seeking to assist in committing Mrs. Roessert. The contact between defendant and plaintiffs was direct and purely medical in nature. Hill's relationship with the Roesserts was not limited to administering a benefits plan, nor was this particular action about plan benefits, it was about the medical judgment that Hill and Dr. Philipson, a Hill physician, exercised with respect to Mrs. Roessert, a patient. Plaintiffs' cause of action amounts to a medical malpractice claim and, without more, belongs in state court. Hill and Health Net both argue unconvincingly that there is no cause of action without plan. If defendants acted as complaint alleges, plaintiffs could well state a cause of action for traditional state-law tort despite the existence of an employee benefit plan: Hill, acting as a medical professional, calling to commit a mentally fragile person who cannot imagine that she needs to be committed.

It is for good reason that Hill bases its entire argument against the motion to remand on the original complaint. However, accepting the amended complaint for purposes of this motion, the court concludes that the reasoning articulated above with respect to Health Net applies with even greater force to Hill and this court is accordingly without either removal or subject matter jurisdiction.

## C. Dr. Wang

■ Although Dr. Wang submitted a separate motion to dismiss on the basis of ERISA preemption, he filed a statement of nonopposition to plaintiffs' motion to remand. The Roesserts' amended complaint against Dr. Wang alleges that he prescribed medications which were harmful to Mrs. Roessert and refused to change the dosage or medication after she notified him of their effects. This is a classic malpractice claim against a physician who rendered medical care. Given Dr. Wang's nonopposition as well as "California's strong interest in ensuring that negligent professionals practicing within its borders are held accountable," *Hanovi Corp. v. San Francisco Pension Corp.*, No. C–93–2822 MHP, 1993 WL 548809 at *4 (N.D.Cal. Dec. 15, 1993), the court finds that the Roesserts' claims against Dr. Wang should be remanded to state court.

## D. Dr. Rest

Dr. Rest filed a motion to dismiss based on plaintiffs' failure to state claims under California law but did not file an opposition to the motion to remand. At oral argument, counsel for Dr. Rest indicated that he believed the action belonged in state court. The Roesserts allege that Dr. Rest was negligent in refusing to treat Mrs. Roessert or to accept her as a patient and in treating Mrs. Roessert rudely, causing her emotional distress.

■ Although Dr. Rest's reasons for refusing to treat Mrs. Roessert may have been related to the employee benefit plan—in this case, to Alta Bates' physician repayment policy—it is unlikely that Dr. Rest would be the proper defendant in a claim based on a repayment policy under the plan. As plaintiffs dismissed Alta Bates as a defendant and do not appear to assert claims based on Alta Bates' repayment policy, the court understands the cause of action to depend entirely on Dr. Rest's refusal to take Mrs. Roessert on as a CFS patient, irrespective of his reasons for doing so. Unless the plan gives participants a right to care by any doctor they choose and affords physicians no control over how many patients they accept, Dr. Rest's actions do not amount to a denial of benefits but a denial of care by one particular doctor. Moreover, defendant attests that under his contract with Alta Bates he is permitted to limit his patients. As the Roesserts' claims against Dr. Rest are unrelated to their rights or potential claims under an ERISA plan those claims are hereby remanded to state court.

## II. *Motion to Dismiss*

As the motion to remand is granted with respect to all defendants, this court is without jurisdiction to consider defendants' motions to dismiss.

## CONCLUSION

Based on the foregoing discussion, the court concludes that plaintiffs' claims are not to recover benefits or enforce rights under an ERISA plan for the purposes of section 502, and therefore are not completely preempted by ERISA. Nothing in this conclusion affects defendants' ability to raise preemption as a defense under section 514(a) once in state court.

For the reasons stated above, IT IS HEREBY ORDERED that plaintiffs' motion to remand the entire action to state court is GRANTED. The Clerk of this Court shall send a certified copy of this Memorandum and Order forthwith to the Clerk of the Superior Court for the County of Contra Costa.

IT IS SO ORDERED.