Pamela **DANCA**, Joseph Danca, Jr., Katelyn Danca and Lisa A. Danca, Plaintiffs,

v.

**EMERSON HOSPITAL**, Melrose–Wakefield Hospital, Phoenix Home Life Mutual Insurance Co., Private Healthcare Systems, Inc., Saroj Joshi, M.D., Mary Anna Sullivan, M.D. and James T. Chengelis, M.D., Defendants.

Civil Action No. 98–10029–PBS.

United States District Court, D. Massachusetts.

May 21, 1998.

---

John W. Bristler, Bristler & Zandrow, Boston, MA, for Pamela Danca, Joseph J. Danca, Jr., Katelyn J. Danca & Lisa A. Danca.

Paul R. Greenberg, Rindler & Morgan, P.C., Boston, MA, for Emerson Hosp.

Joan Eldridge, Foster & Eldridge, Cambridge, MA, for Melrose Wakefield Hosp.

Mark C. Rosenthal, Day, Berry & Howard, Boston, MA, Albert Zakarian, Christine Shaw, Day, Berry & Howard, Hartford, CT, for Pheonix Home Life Mutual Ins. Co.

Tara Ann O'Neil, Private Healthcare Systems, Inc., Waltham, MA, Nicholas P. Hansen, Stapelton, Pryor & Pascoe, Denver, CO, for Private Healthcare Systems, Inc.

Claudia A. Hunter, Hunter & Walsh, Boston, MA, for Saroj Joshi, M.D.

David M. Gould, Ficksman & Conley, Boston, MA, for Mary Anna Sullivan.

Edward D. McCarthy, Janet Nally Barnes, McCarthy, Bouley, Foster & Eldridge, PC, Cambridge, MA, for James T. Chengelis.

### MEMORANDUM AND ORDER

SARIS, District Judge.

## I. INTRODUCTION

The plaintiff, Pamela Danca, who is severely disfigured as a result of attempted suicide by self-immolation, brings this action for compensatory damages, alleging negligent medical treatment and improper processing of benefit claims against numerous defendants, including an insurer, a claim administrator, two hospitals and three physicians. Defendant Private Healthcare Systems, Inc. ("PHCS") is a third-party administrator which denied authorization for hospitalization in the specific psychiatric facility requested by the treating physician, and approved authorization for other hospitals instead. PHCS now moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that the negligence claims against it are pre-empted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.* Phoenix Home Life Mutual Insurance Company has joined in the motion. After hearing, the motion to dismiss is *ALLOWED,* and the action is remanded to state court.

This case should be a clarion call to lawyers and health care beneficiaries and providers to come to court for equitable relief when a requested treatment is denied before it is too late under ERISA.

## II. BACKGROUND

Pamela and Joseph Danca, Jr. live in Wakefield, Massachusetts with their daughters Lisa and Katelyn. The family was covered by a health insurance policy issued by defendant Phoenix Home Life Mutual Insurance Company ("Phoenix") which Mr. Danca obtained through his employment.

Phoenix contracted with PHCS, a so-called "third-party administrator," to perform utilization review. Utilization review is a cost-containment strategy that involves the evaluation of the appropriateness of a given course of treatment. In the managed care context, this usually involves prospective review, or "pre-certification," of more expensive treatments or medical procedures. This arrangement that is now common among health insurance providers.

Mrs. Danca was initially diagnosed with bipolar disorder at the age of seventeen. On September 21, 1994, defendant Dr. Mary Anna Sullivan diagnosed Mrs. Danca as acutely psychotic. Dr. Sullivan sought to hospitalize her at McLean Hospital ("McLean"), a psychiatric facility in Belmont, Massachusetts where she had previously been treated successfully. Contrary to Dr. Sullivan's recommendation, PHCS declined to pre-certify admission and treatment at McLean but indicated that Mrs. Danca would be approved for hospitalization at two other facilities, one of which was defendant Emerson Hospital ("Emerson") in Concord, Massachusetts.

Mrs. Danca was then pre-certified and admitted to Emerson for psychiatric treatment. During her treatment under the care of defendant Dr. Saroj Joshi at Emerson, Mrs. Danca was denied treatment that had proven helpful in the past at McLean. The treatment that she received at Emerson proved unsuccessful.

After her treatment at Emerson, Mrs. Danca's mental condition continued to deteriorate. Mrs. Danca attempted suicide by drug overdose and was hospitalized at defendant Melrose–Wakefield Hospital ("Melrose–Wakefield") where her treating physician was defendant Dr. James T. Chengelis. After brief, and apparently unsuccessful, treatment at Melrose–Wakefield, Mrs. Danca was

discharged and released to the care of Dr. Sullivan. Tragically, Mrs. Danca then attempted suicide by self-immolation. As a result, she has been severely and permanently disfigured: she was burned over forty-five percent of her body and lost the fingers on both hands. Mrs. Danca has endured numerous skin grafting operations and continues to require extensive medical treatment.

On September 23, 1997, Mrs. Danca, her husband, and their two daughters brought an action in Massachusetts Superior Court alleging negligence and loss of consortium against each of the defendants. They seek compensatory damages, including damages for pain and suffering. The Defendants removed the action here pursuant 28 U.S.C. § 1441, and PHCS filed the present motion to dismiss pursuant to Rule 12(b)(6).

### III. DISCUSSION

#### A. *Dismissal Standard*

Under Rule 12(b)(6), a complaint may be dismissed which "fail[s] to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must take the material facts alleged in the Complaint as true and view them in the light most favorable to the plaintiff. *Deren v. Digital Equip. Corp.*, 61 F.3d 1, 1 (1st Cir.1995). Viewed in that light, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 10 (1st Cir.1995)(quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

#### B. *ERISA Preemption*

The crux of the PHCS's motion to dismiss is that the Dancas' claims against it are preempted by § 514(a) of ERISA. The Dancas contend that dismissal is inappropriate because their state law claims do not "relate to" an employee benefit plan within the meaning of § 514(a).

█ Section 514(a) of ERISA contains a broad preemption provision which reads:

> Except as provided for in subsection (b) of this section, the provisions of this subchapter and subchapter III of this subchapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

29 U.S.C. § 1144(a). According the statute, " 'State Law' includes all laws decisions, rules, regulations, or other State actions having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). The Supreme Court has construed § 514(a) such that a law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Preemption under § 514 is a powerful vacuum cleaner because

> Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) [29 U.S.C. § 1132(a)] be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action would pose an obstacle to the purposes and objectives of Congress.

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

█ The broad scope of claims completely preempted by ERISA includes common law tort claims which, in effect, would create remedies for improper processing of claims. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (concluding that § 502 of ERISA is such an area of sweeping pre-emption that claims couched as state law claims must be characterized as federal and may be removed notwithstanding the well-pleaded complaint rule). "The pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.' " *Pilot Life*, 481 U.S. at 47, 107 S.Ct. 1549 (quoting *Shaw*, 463 U.S. at 97, 103 S.Ct. 2890). Rather, "common law causes of action ... based on alleged improper processing of a claim for benefits .. undoubtedly meet the criteria for preemption under § 514(a)." *Id.* at 48, 107 S.Ct. 1549. Recent cases on the breadth of ERISA preemption have not affected the

doctrine's scope as it applies to common law claims based on improper processing of claims. *Cf., e.g., De Buono v. NYSA–ILA Medical and Clinical Services Fund*, 520 U.S. 806, —— – ——, 117 S.Ct. 1747, 1751–1754, 138 L.Ed.2d 21 (1997) (limiting scope of § 514(a) in context of taxation of medical facilities but leaving intact prior preemption cases). The expansiveness of ERISA's preemption provision has prompted one court to liken it to a " 'Pac Man' that runs around the legal landscape . . . eating up other claims." *Andrews–Clarke v. Travelers Ins. Co.*, 984 F.Supp. 49, 57 n. 31 (D.Mass.1997) (Young, J.) (citation omitted)(granting motion to dismiss state wrongful death, contract and medical malpractice claims based on ERISA preemption where plaintiff claimed her husband died because a utilization review agent refused to authorize the inpatient rehabilitation program for alcoholism provided in the plan).

█ Here, the gravamen of the Dancas' claims against PHCS is the improper denial of Mrs. Danca's request for pre-authorization for placement at McLean Hospital. Specifically, the Dancas allege that PHCS (a) failed to ensure that adequate medical personnel handled and evaluated her authorization request; (b) failed to adequately evaluate the requests of her physicians; (c) failed to adequately train the staff evaluating the requests; (d) negligently failed to follow the recommendation of her treating physicians as to the appropriate treating facility; and (e) negligently inflicted emotional distress (Count V. of Second Amended Complaint) (Docket No. 26).[1]

The viability of a claim based on these allegations is directly foreclosed by the First Circuit's recent opinion in *Turner v. Fallon Community Health Plan*, 127 F.3d 196 (1st Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1512, 140 L.Ed.2d 666, 66 U.S.L.W. 3492 (U.S. April 20, 1998). In *Turner*, the plaintiff, administrator of his late wife's estate, brought state law claims for breach of contract and wrongful death against a health maintenance organization. The decedent, who had been diagnosed with metastasized breast cancer, was denied authorization for participation in a high-dose chemotherapy/bone marrow transplant program. The Court, holding that the plaintiff's claims were preempted by § 514(a), noted: "It would be difficult to think of a state law that relates more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan." *Id.* at 199.

The Dancas' claims appear, in all important respects, indistinguishable from those preempted in *Turner* and *Andrews–Clarke*. The Dancas, despite their characterizations to the contrary, are essentially seeking a remedy for a breach of an obligation under the plan to provide certain benefits, namely, hospitalization at McLean. Section 514(a) precludes all "state claims to enforce rights under an ERISA plan or obtain damages for the wrongful withholding of those rights." *Id.*

█ The Dancas contend that their state law claims do not "relate to" an ERISA qualified plan because PHCS stepped beyond the scope of ordinary utilization review and participated in actual medical treatment decisions. As such, citing Restatement (Second) of Torts, § 324A (1965), the Dancas argue, those agents assumed a duty of care to manage and control plaintiff's healthcare. It is unimportant, for purposes of ERISA preemption, that decisions of agents of PHCS affected actual treatment decisions (i.e, the appropriate place of hospitalization) because state law claims for negligent treatment decisions made in the course of utilization review are also preempted by § 514(a). *See, e.g., Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1489 (7th Cir.1996) (holding plaintiff cannot transform a claim for denial of benefits under ERISA into a state law claim by alleging that utilization review agent negligently determined that physical therapy to rehabilitate a knee was not necessary); *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1331–1335 (5th Cir.1992) (holding that utilization review agents made medical decisions, but negligence claim is nonetheless preempted by § 514(a) because the medical

1. In their memoranda the Dancas allege many facts concerning the "active role" of PHCS which are not included in the second amended complaint and are not, therefore, considered for purposes of this motion.

decisions were made in the context of benefit determinations).

This is not similar to those cases where a plan beneficiary has been permitted to assert a medical malpractice claim against a treating physician who works for an HMO. *See, e.g., Lancaster v. Kaiser Foundation Health Plan of Mid–Atlantic States, Inc.,* 958 F.Supp. 1137, 1147 (E.D.Va.1997) (holding that ERISA does not preempt professional malpractice claims); *Edelen v. Osterman,* 943 F.Supp. 75, 76–77 (D.D.C.1996) (holding that a malpractice claim against a treating medical provider at an HMO was not preempted); *Tufino v. New York Hotel and Motel Trades Council,* 223 A.D.2d 245, 646 N.Y.S.2d 799, 802 (N.Y.App.Div.1996) (holding that vicarious liability claim against union based on medical malpractice of treating physician is not preempted by ERISA).

The Court is not swayed by the Dancas' reliance on *Roessert v. Health Net,* 929 F.Supp. 343 (N.D.Cal.1996), where plaintiffs alleged that the third party administrator became a provider of medical treatment when it directed a treating provider to commit a beneficiary diagnosed with chronic fatigue syndrome to a psychiatric facility. *Id.* at 351. Here the Dancas' claims are based on the denial of authorization for admission to a specific psychiatric facility, not claims based on the pro-active efforts of claim administrators to commit to psychiatric hospitalization a person who had sought no such treatment. The Dancas' claims are more analogous factually to those in *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 942 (6th Cir.1995) (holding that a claim for refusing to authorize psychiatric benefits for treatment of severe substance abuse problem was preempted by § 514 and § 502 of ERISA).

 Had the Dancas sought review of PHCS's benefit determination *before* the injury occurred, alleging an imminent threat to life or health, this Court would have had the statutory authority to provide prospective relief for benefits allegedly due under the plan, perhaps averting this catastrophe. *Arizona v. Mauro,* 481 U.S. at 531, 107 S.Ct. 1931, 95 L.Ed.2d 458 (holding under the exclusive civil enforcement provisions of § 502(a), as set forth in 29 U.S.C. § 1132(a), that a beneficiary may "sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits."); *Turner* at 198–200 (holding that 29 U.S.C. § 1132(a)(3)(B) may permit equitable relief against a plan administrator for breach of fiduciary duty even without exhaustion of remedies, where imminent threat to life or health is demonstrated .)

## IV. ORDER

For the reasons stated above, the Defendant Private Healthcare Systems, Inc.'s Motion to Dismiss (Docket No. 6) is *ALLOWED.* The Court also *ALLOWS* the motion of Phoenix Home Life Mutual Insurance Company to dismiss on the same grounds. The Court orders the case remanded.