**Derinda S. PERSON, Plaintiff,**

v.

**PHYSICIANS HEALTH PLAN, INC., Defendant.**

**No. CIV.A. 3:98CV298.**

United States District Court, E.D. Virginia, Richmond Division.

July 9, 1998.

Mark Charles Nanavati, Kevin V. Logan, Sinnott, Nuckols & Logan, Midlothian, VA, for Plaintiff.

Mary Margaret Hutche Priddy, Goodman, West & Filetti, Glen Allen, VA, Gilbert E. Schill, McGuire, Woods, Battle & Boothe, Richmond, VA, Jeanette Dian Rogers, Blue Cross & Blue Shield of Virginia, Richmond, VA, for Defendant.

### *MEMORANDUM OPINION*

SPENCER, District Judge.

THIS MATTER is before the Court on two motions. The first is a motion to remand by the plaintiff, Derinda S. Person, Administrator upon the Estate of Earl Warren Person, deceased. The second is a motion to dismiss the Motion for Judgment by the defendant Physicians Health Plan, Inc. ("PHP"). For the reasons expressed below, the Court DENIES the motion to remand and GRANTS the motion to dismiss.

### *I. Background*

The following facts are taken from the Motion for Judgment. Ms. Person is the Administrator upon the Estate of Earl Warren Person, who is deceased. Mr. Person was a member of "Healthkeepers," which is the trade name under which defendant PHP does business in Richmond. As a member of Healthkeepers, Mr. Person was provided insurance coverage for medical care. On November 27, 1996, Healthkeepers authorized the referral of Mr. Person from Dr. Emerson

D. Baugh, Jr. to Cardiovascular Associates, specifically Dr. Anthony Caruso, for consultation and treatment of cardiac dysrhythmia. Then, on December 4, 1996, Dr. Caruso admitted Mr. Person to Chippenham Hospital for consultation and treatment of cardiac dysrhythmia. Mr. Person was admitted with dilated cardiomyopathy and ventricular tachycardia.

Dr. Caruso requested approval from Healthkeepers for a surgical procedure on Mr. Person to install an "ICD," but this request was denied for "px contract" and because PHP believed it was not medically necessary and thus excluded from coverage.[1] The case was later reviewed by PHP through its Physician Review for Medical Management, which stated that it "[w]ould deny" the procedure because "there is documentation that the claim condition is preexisting."[2] This decision was followed by subsequent appeals by Mr. Person and Dr. Caruso, to no avail.

Dr. Caruso discharged Mr. Person on December 10, 1996. On December 11, 1996, Healthkeepers stated that its decision to deny benefits to Mr. Person based on a preexisting condition stemmed from its belief that Mr. Person needed a liver transplant rather than an ICD.[3] Later that day, Healthkeepers then stated that a heart transplant was needed instead. However, five days later, Mr. Person died by reason of cardio respiratory arrest, dilated cardiomyapathy and a left ventricular ejection fraction of 10%.[4]

Ironically, after Mr. Person's death, on or about December 19, 1996, Healthkeepers sent letters to Mr. Person and his primary care physician stating that the inpatient benefits requested by Dr. Caruso were medically necessary and covered.[5] Healthkeepers later even made notations that Mr. Person's cardiac condition had not been preexisting.[6]

Consequently, Ms. Person has filed this lawsuit against PHP. In the Motion for Judgment that was filed in Circuit Court for the City of Richmond, Ms. Person alleges that PHP breached its duty to her decedent by willfully, recklessly and negligently diagnosing the type and severity of his condition and disregarding Dr. Caruso's diagnosis/recommendations. She alleges that PHP willfully, recklessly and negligently denied coverage for the surgical procedure where no basis for the denial existed and failed to recognize the medical necessity of the procedure. Ms. Person further alleges that PHP willfully, recklessly and negligently determined that Mr. Person had a preexisting condition that excluded coverage for the surgical procedure. Finally, Ms. Person alleges that PHP breached its express and implied contract to properly correct and/or alleviate Mr. Person's covered conditions. According to Ms. Person, Mr. Person died as a direct and proximate result of PHP's negligence, breach of contract and breach of warranty.

On May 14, 1998, PHP filed a demurrer in the Circuit Court and simultaneously removed the case to this Court based on its belief that Ms. Person's claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, 1132(a). Ms. Person has subsequently filed a motion to remand and PHP has filed a motion to dismiss.

## II. Discussion

### A. Ms. Person's Motion to Remand

Ms. Person claims that the Motion for Judgment sets forth merely a medical malpractice tort action as outlined by Virginia Code Section 8.01–581.1, et seq., Therefore, she argues that removal to this Court is improper as the Motion does not touch on a question of federal law.

The burden of establishing removal jurisdiction rests with the defendant. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3rd Cir.1985). Under the "well-pleaded complaint" rule, a cause of action "arises

---

1. Mot. for Judgment, Exs. E, F, G & H.

2. Mot. for Judgment, para. 10.

3. Mot. for Judgment, Ex. M.

4. Mot. for Judgment, Ex. N.

5. Mot. for Judgment Exs. O, P.

6. Mot. for Judgment Ex. R.

under" federal law, and removal is proper, only if a federal question is presented on the face of the plaintiff's properly-pleaded complaint. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). However, the "complete preemption" doctrine or exception overtakes the "well-pleaded complaint" rule and allows removal where claims asserted under state law conflict with a federal statutory scheme, i.e., where Congress so completely preempts a particular area of law that any civil complaint raising claims under that law, even if phrased in terms of a state cause of action, is displaced by the federal statutory scheme. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Franchise Bd.,* 463 U.S. at 23, 103 S.Ct. 2841.

■ The "complete preemption" exception supports removal of state causes of action that fit within the scope of ERISA's civil enforcement provision, § 502(a)(1)(B),[7] which authorizes action by a participant or beneficiary of an ERISA plan to recover benefits or to enforce or clarify rights under the terms of a health plan. *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 355 (3d Cir. 1995), *cert. denied,* 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995). Thus, every state claim completely preempted by Section 502 is removable and then subject to dismissal under Section 514.[8]

While the Court of Appeals for the Fourth Circuit has not yet formulated a method by which to determine whether a claim presented as simply a state medical malpractice cause of action is a claim really falling under the complete preemption of Section 502(a), certain other Courts of Appeals and one Court in this District have done so. The Court in this District draws the distinction between Section 502(a) claims versus state malpractice claims as follows, in *Lancaster v.*

*Kaiser Foundation Health Plan of Mid-Atlantic States, Inc.,* 958 F.Supp. 1137 (E.D.Va. 1997):

> [T]here is complete preemption, and consequently removal jurisdiction, where an ERISA plan beneficiary or participant challenges the administrative denial of a medical benefit due under the plan, *i.e.,* where plaintiff's complaint assails the *quantity* of benefits received. But complete preemption, and hence removal jurisdiction, is absent where an ERISA plan beneficiary or participant challenges the soundness of a medical decision made during the course of treatment, *i.e.,* where plaintiff's complaint assails the *quality* of care provided under the plan.

*Id.* at 1145. In the *Lancaster* case, a mother and her child sued two doctors, their medical group and an HMO in state court after the doctors had been treating the child with medication for headaches and nausea but failed to timely order an MRI, thereby missing her brain tumor. *Id.* at 1140. In addition to accusing the defendants of fraud, the plaintiffs accused of negligence in misdiagnosis and inappropriate use of drugs. *Id.* at 1141. They sued the HMO and medical group for indirect negligence through respondeat superior and direct negligence for failure to establish procedures to prevent the doctors' malpractice.[9] *Id.* at 1141. After analyzing the distinction between administrative decisions falling under Section 502 and medical decisions that do not, the Court held that the medical · malpractice claims against the doctors for failure to diagnose the tumor fell outside of ERISA's Section 502 but that the negligence and fraud claims against the HMO concerning its procedure in awarding doctors for not ordering tests fell within Section 502 and supported removal. *Id.* at 1146–47.

Prior to *Lancaster,* the Third Circuit drew a similar distinction in *Dukes v. U.S. Health-*

---

7. Section 502(a) provides as follows:

   A civil action may be brought—(1) by a participant or beneficiary—(A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

8. Section 514(a) provides that, with few exceptions, ERISA provisions, "supersede any and all State common laws insofar as they may now or hereafter relate to any employee benefit plan."

9. The HMO had a financial incentive program where doctors received bonuses for avoiding excessive treatments and tests. *Id.* at 1140.

care, Inc., 57 F.3d 350 (3d Cir.), *cert. denied*, 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995). In that case, the Court concluded that removal was improper

> because the plaintiff's claims ... merely attack the *quality* of the benefits they received. The plaintiffs here simply do not claim that the plans erroneously withheld benefits due. Nor do they ask the state courts to enforce their rights under the terms of their respective plans or to clarify their rights to future benefits. As a result, the plaintiffs' claims fall outside of the scope of § 502(a)(1)(B) and these cases must be remanded ....

*Id.* at 356. In the two cases before the Third Circuit, the plaintiffs were suing HMOs under various agency and negligence theories for injuries arising from the medical malpractice of HMO-affiliated hospitals and medical personnel. *Id.* at 351. In the first of the two cases, a doctor failed to perform a timely blood test that may have led to saving the life of the plaintiff's husband; significantly, the doctor's failure did not stem from the HMO's refusing to pay for the blood test. *Id.* at 352. In the second case, the doctor that worked for the HMO defendant negligently ignored the plaintiff's symptoms that indicated preeclampsia, causing the daughter's death. *Id.* at 353. In both cases, the plaintiffs were suing the HMOs as "arrangers of their decedents' medical treatment." *Id.* at 361. The plaintiffs did not allege that the HMOs were negligent in denying them benefits; therefore, the Court did not conclude that the plaintiffs' claims fell under Section 502. *Id.* at 356–57.

■ However, this case is factually more similar to cases where removal was held to be proper. The primary case is *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321 (5th Cir.), *cert. denied*, 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992), where the medical plan at issue had a provision for "precertification," requiring advanced approval for overnight hospital admissions and certain medical procedures. The plaintiffs sued the plan for malpractice for making a "medical decision" in denying the hospitalization of the plaintiff during a critical period in her pregnancy, which resulted in the death of her unborn child. *Id.* at 1324. The court held that preemption was applicable because, assuming the plan made such a medical decision, it was made "in the context of making a determination about the availability of benefits under the plan." *Id.* at 1331. *See Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc.*, 999 F.2d 298 (8th Cir.1993), *cert. denied*, 510 U.S. 1045, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994) (holding state law claims arose from HMO's administration of benefits under the health benefit plan and were therefore preempted by ERISA in case where HMO denied precertification for surgery).[10]

In the instant case, there is no allegation of medical malpractice under the Virginia Code in the Motion for Judgment. Neither is there mention of a wrongful death claim or statute. Ms. Person does not assert a claim against any physicians or hospital. She simply sues PHP for

> breach[ing] his [sic] duty to plaintiff's decedent ... by willfully, recklessly and negligently *denying coverage* for the surgical procedure where no basis for said denial existed; by willfully, recklessly and negligently *failing to recognize* the medical necessity of the surgical procedure; and by willfully, recklessly and negligently *improperly determining* that the plaintiff's decedent had a pre-existing condition

10. PHP urges that the cases cited by the plaintiff are all distinguishable. For instance, in *Roessert v. Health Net*, 929 F.Supp. 343 (N.D.Cal.1996), the plaintiffs sued two doctors, their medical groups and an HMO for the physicians' misdiagnosing and mistreating the plaintiff patient. The court granted the plaintiffs' motion to remand because there was no Section 502 preemption as the plaintiffs "maintaine[ed] that their complaint [was] based on the quality of medical care provided by the defendants [and was] unrelated to their right to benefits." *Id.* at 348. Then, in *Morrison v. Seafarers Int'l Union of North America AFL–CIO*, 954 F.Supp. 55 (E.D.N.Y.1996), where the plaintiffs sued several doctors and the plaintiff husband's employee benefit plan for the doctors' prescribing the wrong medicine, the court also granted the motion to remand noting that "none of the Plaintiffs' claims against the Plan can be characterized as seeking to recover benefits due to them under the terms of the plan, to enforce their rights under the terms of the plan, or to clarify their rights under the plan." *Id.* at 57.

which excluded coverage for the surgical procedure.

(Motion for Judgment, para. 24.) (emphasis added) Ms. Person is seeking redress about what PHP did not do in carrying out its employee benefit plan/administrative responsibilities, rather than about what a physician or hospital did or did not do in fashioning medical treatment. The Court cannot escape the fact that Person's Motion for Judgment reads like an action against PHP for denying benefits, an administrative decision, rather than for an erroneous medical decision. Unfortunately, as the *Corcoran* Court suggested, even when a precertification decision has some hint of quality care assessment, the overall decision is about the quantity of benefits.[11]

### 2. Motion to Dismiss

 Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a claim on the grounds of failure to state a claim upon which relief can be granted. PHP moves the Court to dismiss the Motion for Judgment on the ground that all claims asserted in the Motion are preempted by ERISA. As this Court has determined that it has jurisdiction over the Motion solely because it falls under Section 502(a), the Motion is preempted and has to be dismissed.[12] *See Lancaster,* 958 F.Supp. at 1150; *Corcoran,* 965 F.2d 1321.

### III. Conclusion

In short, the Court DENIES the motion to remand and GRANTS the motion to dismiss the Motion for Judgment as preempted.

An appropriate Order shall issue.

**11.** Ms. Person gives the Court policy reasons as to why the case should be remanded. She argues that she would not be adequately compensated for her injuries and PHP would not be required to take financial responsibility for the death it caused if the Court dismissed the suit. She argues that entities like the defendants would not be deterred from similar conduct in the future. She further argues that making PHP pay for the costs associated with her injuries would alleviate taxpayers from that potential burden. Yet this Court and other courts have

### FINAL ORDER

THIS MATTER is before the Court on on two motions. The first is a motion to remand by the plaintiff, Derinda S. Person, Administrator upon the Estate of Earl Warren Person, deceased ("Person"). The second is a motion to dismiss the Motion for Judgment, or in the alternative, a motion for summary judgment, by the defendant Physicians Health Plan, Inc. ("PHP"). For the reasons expressed in the accompanying Memorandum Opinion, the Court DENIES the motion to remand and GRANTS the motion to dismiss. The case is DISMISSED.

It is SO ORDERED.

not been unmindful of these policy concerns as well as the unfairness that may arise in certain situations. However, the courts' hands are tied by Congress and ERISA's plain language. *See, e.g. Corcoran,* 965 F.2d at 1338–39.

**12.** Due to the fact that the Court is dismissing the Motion because it is preempted under ERISA, the Court need not address PHP's argument that Ms. Person's claims are also time-barred.