Sweeney, Constance M., J.
The original action in this case was filed on February 12, 2007, by the plaintiff, Anthony Provost (Provost), by his mother and next friend Laurie Provost, against Larry Vezina, Jr. (Vezina), Sherry Harder (Harder), Ronald Decoteau (Decoteau), and Barbara Levi, as trustee of the Regency Condominium Trust (Regency). The case stems from an April 27, 2006 dog attack on a child, by a dog owned by Vezina. The attack occurred at a Regency condominium unit owned by Decoteau and rented to Harder. Summary judgment entered for Decoteau on the original action on October 21, 2008. Default judgment entered against Vezina and Harder on June 16, 2009.
The matter is now before the Court on the issue of Decoteau’s liability for indemnification of Regency. Provost and Regency agreed to a settlement in the amount of $60,000, in late 2008. Concomitantly, Regency moved to amend its answer and add a cross claim against Decoteau,[3] seeking indemnification. On November 20, 2008, this Court approved the settlement and allowed Regency’s motion to amend, severing the cross claim against Decoteau from the underlying action. For the following reasons, judgment will enter for the plaintiff-in-crossclaim, Regency.
FINDINGS OF FACT
After a jury waived trial held on November 12, 2009, I find the following facts relevant to the issue of Decoteau’s liability for indemnification of Regency.
Decoteau is the owner of the Regency Condominium Unit at 4 Regency Park Drive (the Unit) in Aga-wam. The Regency Condominium Trust Master Deed (Master Deed) and Condominium Bylaws and Regulations (Regulations) (collectively, Exhibit 7) establish that Unit owners shall be subject to the provisions of the Master Deed (Master Deed, Paragraph 9), and that Unit owners “shall indemnify the Condominium Trust and hold it harmless against any loss or liabilities of any kind or character whatsoever arising from or growing out of having any pet or animal in a Unit or other portions of the Condominium” (Regulations, Paragraph 7). There are no explicit requirements in the Master Deed or Regulations relating to how or when Regency must demand defense and indemnification.
There is a factual dispute as to when Decoteau was notified of Regency’s demand for defense and indemnification. Decoteau clearly knew of the underlying action. Regency sent him a letter on May 11, 2006, notifying him of the dog attack and requiring removal of the dog from the Unit. This letter made no mention of any defense or indemnification obligations. Regency claims that it notified Decoteau of its demand for defense and indemnification by letters dated June 21, 2006 (June 21 letter), and August 4, 2008, sent by Thomas Arment (Arment), the claim representative for Regency’s insurer, Travelers Indemnity Company (Travelers). It is undisputed that Decoteau, through his counsel, received the August 4, 2008, letter. However, he denies that he ever received the June 21 letter.
The Court finds that Decoteau did not receive the June 21 letter, and thus, that he did not receive notification of Regency’s defense and indemnification demand prior to August 4, 2008, based on the following. Arment could not state with certainty that he placed the June 21 letter to Decoteau in the envelope addressed to and received by Decoteau, as established by the return receipt bearing his wife’s signature. Decoteau testified that his wife received and signed for the envelope from Arment, but that it contained a letter addressed to Vezina (Vezina letter), demanding that he, as the dog owner, defend and indemnify Regency. Therefore, the Court admitted the return receipt into evidence, but did not admit the June 21 letter addressed to Decoteau. The confusion between the letters appears to have persisted through September 11, 2008, when Regency’s counsel attached the Vezina letter to correspondence with Decoteau’s counsel, as purported proof that Decoteau had previously been notified of Regency’s indemnification demand. Additionally, Vezina was in possession of a copy of the June 21 letter to Decoteau, even though Arment had no explanation why the letter would have been sent to Vezina. The evidence thus supports the inference that *122 Arment mistakenly placed the wrong letter in the envelope addressed to Decoteau, and that Decoteau had no notice of Regency’s demand prior to his counsel’s receipt of the August 4, 2008, letter.
Decoteau had notice of the mediation between Provost and Regency on October 9, 2008, at the latest. A fax from Regency’s counsel to Decoteau’s counsel is evidence of this knowledge. Decoteau did not participate in the mediation. Provost and Regency agreed to a settlement after the mediation. The Court approved the settlement on November 20, 2008. Decoteau was not involved in Regency’s defense at any point in time.
RULINGS OF LAW
Regency asserts that, even if Decoteau did not receive timely notice of its demand for defense and indemnification, the question of notice is legally insignificant because the plain contractual terms of the Master Deed establish a Unit owner’s unconditional obligation to defend and indemnify Regency against any pet-related loss or liability. Decoteau does not dispute the terms of the Master Deed, but instead claims that Regency’s failure to notify him of its demand for defense and indemnification when he still had a meaningful opportunity to participate in the defense constituted a waiver of Regency’s contractual right. The crux of Decoteau’s arguments that he cannot fairly be held to a settlement agreement that he was not a party to, through no fault or breach of his own, but rather through Regency’s failure to request his defense.
The Supreme Judicial Court addressed similar issues surrounding a contractual indemnification obligation in Trustees of the New York, New Haven & Hartford R.R. Co. v. Tileston & Hollingsworth Co., 345 Mass. 111 (1963). In Tileston, the Court held that the defendant was required, based on a contractual obligation, to indemnify the plaintiff for a settlement reached without the indemnitor’s participation, and that no formal demand or request for indemnification was necessary. Id. at 731-33. “[T]he in-demnitee need give the indemnitor merely ‘notice and an opportunity to defend’ in order to bind the indemnitor to the result of a settlement or judgment concluded in the absence of the indemnitor.” Id. at 732.
Here, even though Decoteau did not receive Regency’s demand for indemnification until August 2008, or notice of the pending mediation until October 2008, on the basis of these late notices and his knowledge of the underlying case, he had adequate notice and opportunity to defend Regency’s interest and, by extension, his own interest. Decoteau had approximately three months in which to respond to Regency’s demand by participating in the defense, but he declined to do so. An indemnitee, faced with an indemnitor's refusal to provide a defense, “should have full liberty of determination whether to settle or to try ... it should be able to take into consideration the likelihood of success or failure, the cost, uncertainty, delay, and inconvenience of trial as compared with the advantages of settlement. What is reasonable to do ... it should be permitted to do." Id. (citation omitted). The Court found the settlement between Regency and Provost to be reasonable.
Without doubt, Decoteau’s opportunity to defend was constrained, and Decoteau’s waiver argument makes a colorable appeal in equity. “[A]ny contractual right which exists in favor of a party may be lost through a failure properly and timely to assert the right.” Home Gas Corp. of Mass., Inc. v. Walter’s of Hadley, Inc., 403 Mass. 772, 775 (1989) (finding waiver of contractual right to seek arbitration where party failed to assert it prior to litigation), quoting Bodine v. United Aircraft Corps, 52 Cal.App.3d 940, 945 (1975). “Waiver is a voluntary and intentional relinquishment or abandonment of a known existing right or privilege, which, except for such waiver, would have been enjoyed. It may be expressed formally or it may be implied as a necessary consequence of the waiver’s conduct inconsistent with an assertion of retention of the right. It must be proved by the party relying upon it. And if the only proof of intention to waive rests on what a party does or forbears to do, his act or omissions to act should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible.” Attorney Gen. v Industrial Nat’l Bank of Rhode Island, 380 Mass. 533, 536 n.4 (1980), quoting Buffum v. Chase Nat’l Bank, 192 F.2d 58, 60-61 (7th Cir. 1951), cert. denied, 342 U.S. 944 (1952).
Ultimately, the facts here show that Regency did not fully relinquish its contractual right to seek indemnification from Decoteau. Regency pursued that right by reaching a reasonable unilateral settlement and then seeking reimbursement, as opposed to first disputing Decoteau’s refusal to defend and indemnify. Indemnify provisions are to be fairly and reasonably construed to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished. Urban Inv. & Dev. Co. v. Turner Constr. Co., 35 Mass.App.Ct. 100, 107 (1993). The contractual language at issue here illustrates the parties’ intent to effectuate a broad indemnification obligation, without any specific demand or notification procedure required. Therefore, Decoteau is liable for indemnification of Regency.
ORDER
For the reasons stated, judgment will enter for the plaintiff in cross claim, Regency.

 Regency later amended its cross claim to name EPD Realty Trust (EPD) as an additional defendant, after discovering that EPD, rather than Decoteau individually, is the owner of the condominium unit in question. The Court ruled that EPD would be substituted for Decoteau as the defendant in cross claim. However, the parties have continued to refer to Decoteau as the defendant in cross claim, so the Court will also refer to Decoteau as the defendant in cross claim for the sake of continuity.